UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID F. ERTMAN and JANE E. ERTMAN,<br><br>Plaintiffs,<br><br>- versus -<br><br>R. J. REYNOLDS TOBACCO COMPANY,<br><br>Defendant. | 3:01 CV 1090 (WWE)<br><br><br><br>JUNE 9, 2008 |

**DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF PATHOLOGY MATERIAL CONSIDERED BY PLAINTIFFS' EXPERT, DR. ALLAN FEINGOLD, OR ALTERNATIVELY, TO PRECLUDE DR. FEINGOLD'S PATHOLOGY TESTIMONY**

In violation of Rule 26 of the Federal Rules of Civil Procedure, plaintiffs David F. Ertman and Jane E. Ertman ("plaintiffs") have unreasonably refused to make physical evidence on which their disclosed expert, Dr. Allan Feingold, relies available for inspection and copying by defendant R.J. Reynolds Tobacco Company ("Reynolds") in advance of Dr. Feingold's deposition. Plaintiffs' position is designed to deny Reynolds' counsel the opportunity to properly prepare for the deposition. Consequently, Reynolds' experts have been unable to fully assist Reynolds' counsel as he prepares for a highly technical deposition of Dr. Feingold regarding disease causation and pathology testing. In addition, to the extent Reynolds intends to designate these individuals as testifying experts, their ability to finalize their opinions and expert reports is compromised by the unnecessary and needless delay.

In September 2007, plaintiffs designated Dr. Feingold, a Miami pulmonologist, as a testifying expert witness in this case. The crux of Dr. Feingold's opinion is that Mr. Ertman had

small cell lung cancer that was caused by cigarette smoking. Although Dr. Feingold is *not* a pathologist, and although his initial expert report made no mention whatsoever of pathology testing, on the eve of his deposition in March 2008 he issued a supplemental expert report that disclosed that he had recently reviewed, tested, and relied upon Mr. Ertman's pathology tissue—pathology that plaintiffs had in their possession and had been authorized to perform destructive testing on for several months prior.

Under Rule 26(a)(2)(B), a testifying expert witness must produce all material that he has considered in forming his opinions. Clearly this encompasses the pathology slides at issue here. Reynolds has repeatedly requested that plaintiffs produce, for inspection and copying in advance of Dr. Feingold's deposition, the pathology that Dr. Feingold considered. In an effort to respond to plaintiffs' purported reasons for refusing to produce the materials in advance of Dr. Feingold's deposition, Reynolds has even offered to pay the reasonable travel expenses of plaintiffs' counsel (or other representative) to fly to Miami, where Dr. Feingold practices, so that Dr. Feingold and plaintiffs' counsel (or representative) could both be present while Reynolds' experts examine and copy the pathology slides. Despite the lack of burden or prejudice to plaintiffs, they and Dr. Feingold have refused to produce the pathology under any reasonable terms and have provided no good-faith basis for their position.

Given the foregoing, Reynolds respectfully moves this Court for an Order compelling plaintiffs and Dr. Feingold to produce for inspection and copying, in advance of his deposition, all pathology material that Dr. Feingold has considered in forming his opinions, or alternatively, for an Order precluding Dr. Feingold's testimony related to pathology. In addition, due to Reynolds' repeated attempts to resolve this particular issue and plaintiffs' history of improper

2

delays, Reynolds seeks its attorneys' fees associated with this Motion pursuant to Rule 37(a) of the Federal Rules of Civil Procedure.

## RELEVANT FACTS

*September – October 2007*

Almost nine months ago, on September 25, 2007, plaintiffs served Dr. Feingold's expert report, which summarized his opinion that Mr. Ertman had small cell lung cancer caused by cigarette smoking. Feingold Expert Report (Ex. A)[1]. At that time, Dr. Feingold's opinion was based upon his review of Mr. Ertman's medical records and medical literature linking small cell lung cancer to cigarette smoking. *See id.*

Shortly thereafter, Reynolds' counsel repeatedly attempted to contact plaintiffs' counsel to discuss (1) mutually convenient dates for Dr. Feingold's deposition, and (2) the distribution of Mr. Ertman's unstained pathology tissue among the parties. *See* Reynolds' counsel, Mark R. Seiden, Esq. ("Seiden") email to plaintiffs' counsel, David S. Golub, Esq. ("Golub") 10/4/2007 (noting that Reynolds' counsel tried to reach plaintiffs' counsel "several times" to discuss these issues but got no response) (Ex. B); Seiden letter to Golub, 10/9/2007 (noting that plaintiffs' counsel failed to respond to multiple telephone messages and emails from Reynolds' counsel and was seemingly "incommunicado") (Ex. C). At the time of Mr. Ertman's cancer treatment, the treating hospital biopsied and examined only a small portion of Mr. Ertman's tissue, which it stained and mounted on a few slides (and which Dr. Feingold reviewed prior to his September 2007 expert report). There were several blocks of pathology, however, that the treating hospital had removed by biopsy but had not stained or tested. While plaintiffs had previously signed medical authorizations giving Reynolds legal access to this pathology, the parties had yet to

---

[1] All exhibits are annexed to the accompanying declaration of Reynolds' counsel, Mark R. Seiden.

reach agreement in the fall of 2007 regarding the logistics of transferring this left-over pathology from the hospital's custody, dividing it between them, as well as what destructive testing, if any, the parties would be permitted to conduct.

*November 2007*

Plaintiffs' counsel ignored Reynolds' counsel for over a month, failing to provide dates for *any* expert depositions—even though the scheduling order in place at that time required expert depositions to be completed by November 15, 2007—or to discuss the untested pathology. *See* Seiden email to plaintiffs' counsel, Marilyn Ramos, Esq. ("Ramos") 10/30/2007 (remarking that it had been 45 days since plaintiffs designated their experts and plaintiffs had still not provided any dates for expert depositions) (Ex. D). Finally, after Reynolds unilaterally issued deposition notices and subpoenas to all of plaintiffs' experts—including Dr. Feingold whose deposition was originally noticed for November 12, 2007—plaintiffs' counsel responded with a new date on which they would make Dr. Feingold available—December 13, 2007—to which Reynolds' counsel promptly agreed. *See* Seiden emails to Ramos, 11/08/2007 and 11/12/2007 (Ex. E).

In addition, in November 2007, the parties reached an agreement regarding the distribution and destructive testing of Mr. Ertman's untested pathology tissue. *See* Joint Stipulation and Proposed Order Regarding Transfer and Use of Pathology Slides, so ordered on 11/29/07 (Ex. F). The parties agreed on division of the remaining pathology tissue and to permit any testing, including destructive testing. They also agreed that whether, and to what extent, each parties' pathology testing results would be discoverable by the opposing party would be governed by the Federal Rules of Civil Procedure and federal law. *See id.,* ¶ 4. As of

4

November 30, 2007, both parties were permitted to obtain their pathology materials from the hospital.

*December 2007*

Even though plaintiffs' counsel had offered December 13, 2007, for Dr. Feingold's deposition (and Reynolds' counsel had agreed to that date), plaintiffs' counsel later cancelled that deposition, informing Reynolds that "Dr. Feingold [could] not do 7 hours on Dec. 13." *See* Ramos email to Seiden, 11/13/2007 (Ex. G). Despite numerous other dates in December that Reynolds' counsel then offered, plaintiffs' counsel could not work it into their and Dr. Feingold's schedule (*see* email chain between Seiden and Ramos, 11/13/2007 (Ex. H)), and instead offered January 17, 2008. *See* emails between Ramos and Seiden, 11/19/2007 (Ex. I).

*January 2008*

Dr. Feingold's January deposition was also cancelled. As they did each time his deposition was previously cancelled, Reynolds' counsel promptly requested a new date upon which plaintiffs would make Dr. Feingold available, but plaintiffs' counsel took several weeks to respond. *See, e.g.,* Reynolds' counsel, Amanda Jacobs, Esq. ("Jacobs") email to Ramos, 1/10/2008 (Ex. J) (writing that, despite repeated requests and the imminent discovery deadline, plaintiffs' counsel had not provided a deposition date for Dr. Feingold), 1/15/2008 (Ex. K) (same). Ultimately, Dr. Feingold's deposition was re-scheduled for March 3, 2008.

*February - March 2008*

On Friday evening, February 29, 2008, with Dr. Feingold's deposition set to begin in Miami on Monday March 3, 2008, plaintiffs' counsel, David S. Golub, Esq., telephoned Mark R. Seiden, Esq., Reynolds' counsel, to inform him that Dr. Feingold intended to serve a supplemental expert report based upon his review and testing of the pathology material that the

5

parties received back in November. Reynolds was surprised to hear that Dr. Feingold, a pulmonologist, intended to give expert opinions that only a pathologist should give. Further, despite the fact that plaintiffs had access to and authorization to test this pathology since late November 2007, plaintiffs and Dr. Feingold waited until the eve of his deposition to disclose to Reynolds his intention to serve a supplemental report. The parties necessarily agreed to cancel his deposition until after Reynolds had adequate time to digest Dr. Feingold's supplemental report, which Reynolds did not receive until a week later, on March 7, 2008. In addition, Reynolds also received a handful of photomicrographs—selected photos of certain pieces of pathology tissue—that Dr. Feingold had taken of a couple of his pathology slides.

The stated purpose of Dr. Feingold's supplemental report was to discuss the pathology that he purportedly arranged to have tested and then examined. Feingold Supp. Report (Ex. L). According to his supplemental report, Dr. Feingold selected several pathology slides, and on January 28, 2008, submitted them to a laboratory for "chromogranin A" and "TTF-1" testing. On January 29, 2008, the laboratory reported the results of those tests to Dr. Feingold: "positive" (chromagranin A) and "focally positive" (TTF-1). *See* Genzyme Genetics Lab Report (attached to Feingold Supp. Report (Ex. L)). Dr. Feingold indicated in his supplemental report that he then examined the slides himself and independently confirmed their results. Although the test results came back on January 29, 2008, Dr. Feingold waited more than five weeks (and until the eve of his deposition)—until March 7, 2008—to disclose them to Reynolds. According to Dr. Feingold, the test results support his opinion that Mr. Ertman's cancer was a small cell lung cancer caused by cigarette smoking. In addition, Dr. Feingold's supplemental report discloses

6

that he stained some slides with "H&E", which he examined and concluded were "entirely consistent with metastatic small cell lung cancer." Feingold Supp. Report, p. 15 (Ex. L).[2]

Shortly after receiving Dr. Feingold's supplemental report on March 7, 2008, Reynolds' counsel asked plaintiffs to produce the pathology slides and controls that Dr. Feingold mentioned in his report and considered in forming his opinions pursuant to Rule 26(a)(2)(B).  *See* Seiden letter to Golub, 3/17/2008 (requesting production of pathology slides "as soon as possible") (Ex. M); Jacobs email to Ramos, 3/19/2008 (following up on letter and re-requesting production of pathology slides) (Ex. N).  Initially, plaintiffs' counsel refused to produce them on the grounds that Reynolds had "substantially equivalent" slides.  *See* Ramos letter to Seiden, 3/19/2008 (Ex. O).  Reynolds, however, responded that the fact that both parties had pathology slides did not excuse Dr. Feingold from complying with Rule 26 and producing the specific material he considered in forming his opinions.  *See* Seiden letter to Ramos, 3/27/2008 (Ex. P).  Plaintiffs then retracted their position to some degree, indicating that Reynolds had a right to review the pathology slides at some point, but refused to permit Reynolds to have adequate time or ability to review the material before deposing Dr. Feingold.

For example, despite Reynolds' assurances to maintain the pathology's chain-of-custody, plaintiffs refused to release the pathology from Dr. Feingold's possession.  *See* Jacobs letter to Golub, 5/22/2008 (Ex. Q).  In order to address plaintiffs' chain-of-custody concerns, Reynolds then offered to travel to Miami to review and scan (a high tech copy) the slides at a third-party laboratory facility in the presence of Dr. Feingold and/or plaintiffs' counsel.  *See id.*  Reynolds even offered to pay the reasonable travel expenses of plaintiffs' counsel.  *See id.*

---

[2] As stated above, Dr. Feingold is a pulmonologist.  He is not a pathologist.  While not a topic for this motion, Reynolds reserves its right to challenge the admissibility of Dr. Feingold's opinions regarding Mr. Ertman's pathology on the grounds that he is not qualified to give such opinions.

7

Notwithstanding that their purported chain-of-custody concerns had been addressed, plaintiffs still did not agree. Even after Reynolds informed plaintiffs that Reynolds intended to file this motion to compel, plaintiffs did not change their position one iota. *See* Seiden email to Golub, 5/28/2008 (Ex. R) (informing plaintiffs' counsel that Reynolds intended on filing motion after plaintiffs' counsel did not respond to telephone message regarding same). Plaintiffs' current position is that Reynolds can only *review* (*not* scan, *i.e., copy*) the pathology slides *during* Dr. Feingold's deposition. For a number of reasons discussed below (*infra*, pp. 10-12), that is inadequate.

The current scheduling order required depositions of plaintiffs' experts to be completed on April 11, 2008, and Reynolds' experts to be designated on April 30, 2008 and to be deposed by June 30, 2008. Because plaintiffs have refused to produce the pathology Dr. Feingold considered, Dr. Feingold's deposition has not been taken, and per plaintiffs' consent, Reynolds has not designated experts related to its medical defense. (Reynolds has, however, designated other experts.) Due to the fact that Dr. Feingold clearly relies upon the pathology he selected and intends to discuss it at trial (if permitted to do so), it is imperative that Reynolds be able to fully examine that pathology in advance of Dr. Feingold's deposition and in advance of naming its own medical experts.

## ARGUMENT

### I. Rule 26 Clearly Requires Production of All Pathology Considered By Dr. Feingold.

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires expert witnesses to disclose to the opposing party all "data or other information considered by the witness in forming

8

the opinions." The Advisory Committee Note accompanying this Rule states that, in light of this obligation,

> litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied on by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

FRCP 26, Advisory Committee's Notes to 1993 Amendment. Federal courts, including those within the Second Circuit, hold that this Rule requires a testifying expert to produce all material he has considered in forming his opinions. *See, e.g., Packer v. SN Serv. Corp.*, 243 F.R.D. 39, 43 (D. Conn. 2007) ("Numerous decisions hold that documents considered by the expert in forming his opinions are required to be produced by reason of Rule 26(a)(2)(B)."); *In re Air Crash at Dubrovnik, Croatia,* 2001 U.S. Dist. LEXIS 14334, at *2, 39-40 (D. Conn. June 4, 2001) (ordering party to produce all documents considered by its testifying expert witness under FRCP 26(a)(2)(B)); *Zheng v. Liberty Apparel Co.*, 2004 U.S. Dist. LEXIS 15026, at *3 (S.D.N.Y. July 30, 2004) ("Fed.R.Civ.P. 26(a)(2)(B) . . . requires production of, *inter alia*, all material considered by a testifying expert witness").

Courts have ruled that material regarding scientific testing, if considered by a testifying expert, must be produced to the opposing side. *See Sicurelli v. Jeneric/Pentron Inc.*, 2006 U.S. Dist. LEXIS 29813, at *2, 12-16 (E.D. N.Y. May 16, 2006) (noting that "electron microscopy" testing commissioned by plaintiffs would be subject to disclosure under FRCP 26(a)(2)(B) if considered by plaintiffs' testifying expert). Courts reason that such disclosure "creates a level playing field" by providing a party with the information necessary to effectively cross-examine an opposing party's expert witness. *Sparks v. Seltzer,* 2007 U.S. Dist. LEXIS 6234, at *6-7 (E.D.N.Y. Jan. 29, 2007). The party resisting disclosure bears the burden of showing that an

expert did not consider certain materials in forming his opinion. *Sicurelli*, 2006 U.S. Dist. LEXIS 29813 at *13.

Here, there can be no question that Dr. Feingold "considered" Mr. Ertman's pathology tissue in forming his opinions because his supplemental expert report expressly says that he did. According to his supplemental report, Dr. Feingold "examined" the pathology slides under a microscope and chose certain slides to be tested. In addition, he expressly relies upon his examination and the results of those tests for his opinions that Mr. Ertman had small cell lung cancer. Feingold Supp. Report, p. 15 ("The new H&E and immunohistochemical stains were entirely consistent with metastatic small cell lung cancer.") (Ex. L).

    **(A)    The fact that Reynolds has its own pathology slides does not obviate its need to examine Dr. Feingold's slides or Dr. Feingold's disclosure obligation under Rule 26.**

Plaintiffs and Dr. Feingold are not excused from complying with their disclosure obligations under Rule 26 simply because Reynolds has its own pathology tissue to test. Dr. Feingold has an independent responsibility to produce the specific material he has considered. Even if Reynolds conducted the exact same tests on its own slides, Reynolds would *still* be entitled under the Rules to review Dr. Feingold's slides to confirm that they show what he says they show. Furthermore, while the parties agreed that each party could conduct whatever testing it desired, they also agreed that discovery of that testing would be governed by the Federal Rules of Civil Procedure. *See* Joint Stipulation and Proposed Order Regarding Transfer and Use of Pathology Slides, so ordered on 11/29/07 (Ex. F). Here, because Dr. Feingold considered the requested pathology in forming his opinions, the Federal Rules require that he produce it for the other side to examine and evaluate.

Second, the "positive" test results of materials in Dr. Feingold's possession tell us only part of the story. A "positive" result in these tests is based upon the percentage of microscopic cells that look positive to the reviewing pathologist (and not a pulmonologist) when compared to the controls. What constitutes a "positive" result may vary from pathologist to pathologist based on their examination of the slide and their standards for a positive finding. Thus, Reynolds' expert must be permitted to examine Dr. Feingold's slides (as well as the controls) not only to confirm the positive result, but to determine the specific degree of positivity. Moreover, Dr. Feingold's control slides are essential for proper interpretation of his test results and must also be reviewed.

Similarly, there is a good deal of interobserver and intraobserver variability in reviewing pathology slides generally. Even when reviewing the same slide, different pathologists can reach different conclusions. Without reviewing his slides, Reynolds cannot determine whether its experts or consultants agree or disagree with Dr. Feingold's opinions.

Moreover, photomicrographs, which Dr. Feingold produced with his supplemental report, are not a substitute for physically examining the actual pathology tissue. A photomicrograph is a picture of a chosen portion of tissue—here, the portion that Dr. Feingold wanted Reynolds to see—at a chosen magnification. Rather than being limited to a few cells that were selected and photographed by Dr. Feingold, Reynolds should be permitted to review the full piece of tissue, including the thousands of cells that were tested on the same slide and not photographed.

Finally, due to the complexity of the subject matter, Reynolds' expert or consultant must be permitted to review Dr. Feingold's slides and controls sufficiently *in advance* of Dr. Feingold's deposition in order to allow proper evaluation and consideration. Plaintiffs have had these materials for many months—to allow Reynolds only a few minutes review during a

11

deposition with no time to properly evaluate or prepare for deposition is not sufficient. Defense counsel are not pathologists. They cannot be expected to ask improvised questions to medical doctors concerning complicated pathology issues while they (or their consultant) instantaneously review the pathology for the first time. In order to prepare for such a deposition, Reynolds' counsel needs their consultants and experts to educate them on the science, the literature, and to assist them in selecting deposition exhibits. In addition, without advance review and copies, it would be virtually impossible to discuss microscopic findings at deposition when only one person at a time would be able to view the slide. And finally, reviewing the slides at a deposition would require sophisticated equipment not in defense counsel's possession or within defense counsel's expertise.

In addition to being reviewed, Reynolds must also be able to make "scans"—high tech copies—of Dr. Feingold's slides and controls in advance of his deposition. Without scans of the slides, Reynolds' counsel would be forced to prepare for the deposition from memory alone. Moreover, without scans, there would be no method to "mark" a pathology slide as a deposition (or trial) exhibit, and Dr. Feingold's deposition testimony concerning particular slides would be incomprehensible to someone reviewing the transcript.

### (B)     There is no burden or prejudice on plaintiffs.

Reynolds has offered to fly its expert and plaintiffs' counsel (or its representative) to Miami where Reynolds' expert could examine and scan Dr. Feingold's pathology at a third-party facility. Reynolds has agreed to disclose the name of its expert, the name of the facility, and to allow plaintiffs' counsel and Dr. Feingold (who practices in Miami) to be present at the facility during this examination. Under these terms, the chain of custody of the pathology is preserved, and plaintiffs' counsel and Dr. Feingold have little or no conceivable burden.

Additionally, plaintiffs are not prejudiced in any way by complying with Rule 26. Clearly, Dr. Feingold and plaintiffs plan to rely on Dr. Feingold's pathology and the testing results at trial. Indeed, it is a key basis of Dr. Feingold's opinions. Permitting Reynolds to review the evidence on which they rely can hardly be considered unfair.

### II.  In The Alternative, Dr. Feingold Should Be Precluded From Testifying About The Pathology He Considered.

As an alternative to its motion to compel, Reynolds requests that Dr. Feingold be precluded from giving any testimony concerning or related to any pathology tissue and/or testing that he considered for his opinions in this case. Such result would not be unfair in light of the fact that Dr. Feingold is not a pathologist and Reynolds has attempted to resolve this issue with plaintiffs for months, who provided no good faith basis for their position. In addition, it could take plaintiffs several weeks to produce Dr. Feingold's pathology (if they are so ordered) and to produce Dr. Feingold for deposition, which would only further delay the Court's scheduling order.

### CONCLUSION

Based upon the foregoing, Reynolds respectfully requests this Court to enter an Order compelling plaintiffs and Dr. Feingold to produce to Reynolds for its review and scanning, all pathology material that Dr. Feingold has considered for his opinions in this case sufficiently in advance of his deposition.

In the alternative, Reynolds respectfully requests that Dr. Feingold be precluded from testifying about any pathology tissue and/or testing that he considered for his opinions in this case. Finally, Reynolds requests that the Court order plaintiffs and/or Dr. Feingold to pay Reynolds' attorneys' fees associated with bringing this motion.

                    Respectfully submitted,

By:   /s/ Amanda S. Jacobs_____
       Mark A. Belasic (phv0165)
       mabelasic@jonesday.com
       Amanda S. Jacobs (phv01922)
       asjacobs@jonesday.com
       JONES DAY
       901 Lakeside Avenue
       Northpoint Bldg.
       Cleveland, OH  44114
       (216) 586-3939
       (216) 579-0212 (facsimile)

--- and ---

Mark R. Seiden (ct20612)
mrseiden@jonesday.com
JONES DAY
222 East 41st Street
New York, NY 10017
(212) 326-3939
(212) 755-7306 (facsimile)

David Thomas Ryan (ct05713)
dryan@rc.com
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
(860) 275-8200
(860) 275-8299 (facsimile)

*Attorneys for defendant*
*R.J. Reynolds Tobacco Company*

**CERTIFICATION**

I hereby certify that on June 9, 2008, a copy of the foregoing Memorandum Of Law In Support Of Defendant R.J. Reynolds Tobacco Company's Motion To Compel Production Of Pathology Material Considered By Plaintiffs' Expert, Dr. Allan Feingold, Or Alternatively, To Preclude Dr. Feingold's Pathology Testimony, was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/ Amanda S. Jacobs_____
 AMANDA S. JACOBS  (ct-01922)