UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID F. ERTMAN and JANE E. ERTMAN,<br><br>Plaintiffs,<br><br>- versus -<br><br>R. J. REYNOLDS TOBACCO COMPANY,<br><br>Defendant. | 3:01 CV 1090 (WWE)<br><br><br><br>JUNE 9, 2008 |

**DECLARATION OF COUNSEL PURSUANT TO LOCAL RULE 37 AND IN SUPPORT
OF DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S
MOTION TO COMPEL PRODUCTION OF PATHOLOGY MATERIAL CONSIDERED
BY PLAINTIFFS' EXPERT, DR. ALLAN FEINGOLD, OR ALTERNATIVELY,
TO PRECLUDE DR. FEINGOLD'S PATHOLOGY TESTIMONY**

Mark R. Seiden, pursuant to 28 U.S.C. § 1746 declares and says:

1.      I am a member of the law firm of Jones Day, co-counsel for defendant R.J. Reynolds Tobacco Company ("Reynolds") in the above-captioned matter.  I submit this declaration pursuant to Local Civil Rule 37(a), and in support of Reynolds' Motion To Compel Production Of Pathology Material Considered By Plaintiffs' Expert, Dr. Allan Feingold, Or Alternatively, To Preclude Dr. Feingold's Pathology Testimony.

2.      The first part of this declaration sets forth Reynolds' good faith efforts to avoid the discovery dispute.  The second part of this declaration attaches copies of various documents referenced in the accompanying Memorandum of Law.

A.    **<u>Local Civil Rule 37 Declaration</u>:**

3.    On or about Friday evening, February 29, 2008, with Dr. Feingold's deposition set to begin in Miami on Monday, March 3, 2008, plaintiffs' counsel, David S. Golub, Esq., telephoned me to inform me that Dr. Allan Feingold intended to serve a supplemental expert report based upon his testing and subsequent review of certain pathology material. I agreed to adjourn Dr. Feingold's deposition and to re-schedule it to a date to be determined after Reynolds had adequate time to review Dr. Feingold's supplemental expert report. I received a copy of Dr. Feingold's supplemental expert report a week later, on March 7, 2008. In addition to Dr. Feingold's supplemental expert report, I also received on or about March 7, 2008, certain photomicrographs and a Genzyme Genetics testing report. Attached as Exhibit L is a true and correct copy of Dr. Feingold's supplemental expert report.

4.    On March 17, 2008, I sent a letter to plaintiffs' counsel, David S. Golub, Esq., to request that plaintiffs and Dr. Feingold produce, in advance of his re-scheduled deposition, the pathology material referenced in Dr. Feingold's supplemental expert report and considered by him for his opinions in this case. A true and correct copy of this letter is attached as Exhibit M.

5.    Because Mr. Golub did not respond to my March 17, 2008 letter, on March 19, 2008, my colleague, Amanda S. Jacobs, Esq., sent an email to plaintiffs' counsel, Marilyn Ramos, Esq., to follow-up on my letter and to again request that plaintiffs and Dr. Feingold produce, in advance of Dr. Feingold's deposition, all pathology material that was referenced in Dr. Feingold's supplemental expert report. A true and correct copy of this email is attached as Exhibit N.

- 3 -

6.    Plaintiffs' counsel, Marilyn Ramos, Esq., responded by letter on March 19, 2008, stating that plaintiffs were not willing to produce the pathology considered by Dr. Feingold, and that Reynolds had its own slides with which it could replicate the pathology testing that Dr. Feingold conducted. A true and correct copy of Ms. Ramos's March 19, 2008 letter is attached as Exhibit O.

7.    On March 27, 2008, I sent a letter to Ms. Ramos in which I again requested that plaintiffs and Dr. Feingold produce the pathology material referenced in his supplemental expert report and considered by him for his opinions. In order for her to better understand our position, I explained that under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, Dr. Feingold was obligated to produce the pathology regardless of whether Reynolds had its own pathology material. I asked Ms. Ramos to please respond to my letter by the close of business on March 28, 2008, and informed her that Reynolds intended to file a motion to compel and/or to preclude Dr. Feingold from testifying in the event they refused to produce the pathology. A true and correct copy of this letter is attached as Exhibit P.

8.    Plaintiffs' counsel did not respond to my March 27, 2008 letter until several weeks later.

9.    On April 23, 2008, I had a telephone conversation with plaintiffs' counsel, David S. Golub, Esq., during which we discussed production of the pathology material considered by Dr. Feingold. I proposed that plaintiffs and Dr. Feingold produce the pathology material to Reynolds at a third party location, Genzyme Genetics, which was also the laboratory where Dr. Feingold conducted his testing of Mr. Ertman's pathology. I proposed that Reynolds and its consultants/experts would examine the pathology and

have scans or "virtual copies" made at Genzyme Genetics. I also agreed to identify the names of Reynolds' consultants/experts who would be examining the pathology. Mr. Golub stated that he would take my proposal under consideration. Shortly thereafter, I memorialized our telephone conversation in an email to Mr. Golub. A true and correct copy of this email is attached as Exhibit S.

10. On April 29, 2008, plaintiffs' counsel, David S. Golub, emailed me and informed me that plaintiffs were unwilling to agree to my proposal and were unwilling to release the pathology from Dr. Feingold's control. He stated that plaintiffs would make the pathology available only in Miami and only in the presence of plaintiffs' representative. A true and correct copy of this email is attached as Exhibit T.

11. On May 22, 2008, my colleague, Amanda S. Jacobs, Esq., sent a letter to plaintiffs' counsel, David S. Golub, Esq., and set forth an alternate proposal that she thought would accommodate plaintiffs and Dr. Feingold. She stated that Reynolds was willing to travel to Miami, where its consultants/experts would scan (*i.e.,* copy) the pathology at a third-party laboratory (Bioimagene) and examine the pathology under microscope. Ms. Jacobs offered that Reynolds would pay the reasonable travel expenses of plaintiffs' counsel (or their representative) to travel to Miami, and stated that Dr. Feingold and plaintiffs' counsel (or their representative) could be present during this process in order to preserve the chain-of-custody. Ms. Jacobs asked Mr. Golub to respond to her proposal by the close of business on May 23, 2008, and informed him that if an agreement was not reached, Reynolds intended to ask the Court for relief. A true and correct copy of this letter is attached as Exhibit Q.

12. Plaintiffs' counsel did not respond to Ms. Jacobs's letter by the requested date of May 23, 2008.

13. On or about May 27, 2008, I telephoned plaintiffs' counsel, David S. Golub, Esq., and left him a message on his voicemail requesting that he please respond to our proposal as set forth in Ms. Jacobs's May 22, 2008 letter.

14. Plaintiffs' counsel, David S. Golub, Esq., did not immediately respond to my telephone voice message left on or about May 27, 2008.

15. Finally, on May 28, 2008, I sent plaintiffs' counsel, David S. Golub, Esq., an email, notifying him that, because I had not heard back from him, Reynolds intended to proceed with its motion to compel and/or to preclude Dr. Feingold's testimony. A true and correct copy of this email is attached as Exhibit R.

16. On May 30, 2008, plaintiffs' counsel, David S. Golub, Esq., telephoned me, informing me that plaintiffs' position was that Reynolds could examine the pathology only during Dr. Feingold's deposition. Because this was inadequate, I informed him that Reynolds was proceeding with its motion to compel production of pathology in advance of Dr. Feingold's deposition, and/or to preclude Dr. Feingold's testimony. Although Mr. Golub stated that he would send a formal response, we have not received one as of the date of this declaration.

**B.     Documents Referenced In Accompanying Memorandum**

17. Attached as Exhibit A is a true and correct copy of Dr. Allan Feingold's expert report, dated September 21, 2007.

CLI-1623733v1

18. Attached as Exhibit B is a true and correct copy of Reynolds' counsel, Mark R. Seiden's, Esq., ("Seiden") email to Plaintiffs' counsel, David S. Golub, Esq., ("Golub") dated October 4, 2007.

19. Attached as Exhibit C is a true and correct copy of Seiden's letter to Golub, dated October 9, 2007.

20. Attached as Exhibit D is a true and correct copy of Seiden's email to plaintiffs' counsel, Marilyn Ramos, Esq. ("Ramos"), dated October 30, 2007.

21. Attached as Exhibit E is a true and correct copy of Seiden's emails to Ramos dated November 8, 2007 and November 12, 2007.

22. Attached as Exhibit F is a true and correct copy of the Joint Stipulation and Proposed Order Regarding Transfer and Use of Pathology Slides, so ordered on November 29, 2007.

23. Attached as Exhibit G is a true and correct copy of Ramos's email to Seiden, dated November 13, 2007.

24. Attached as Exhibit H is a true and correct copy of the email chain between Seiden and Ramos, dated November 13, 2007.

25. Attached as Exhibit I is a true and correct copy of the email chain between Ramos and Seiden, dated November 19, 2007.

26. Attached as Exhibit J is a true and correct copy of Jacobs's email to Ramos, dated January 10, 2008.

27. Attached as Exhibit K is a true and correct copy of Jacobs's email to Ramos, dated January 15, 2008.

CLI-1623733v1

- 7 -

28. Attached as Exhibit R is a true and correct copy of Seiden's email to Golub, dated May 28, 2008.

29. I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 9, 2008
      New York, NY

                                   /s/ Mark R. Seiden
                                   Mark R. Seiden, Esq. (ct20612)