P

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number: (212) 326-3451
mrseiden@jonesday.com

JP003752
629000-020414

March 27, 2008

BY UPS OVERNIGHT AND FAX

Marilyn Ramos, Esq.
Silver Golub & Teitell LLP
184 Atlantic Street, P.O. Box 389
Stamford, Connecticut 06904

Re: *David and Jane Ertman v. R.J. Reynolds Tobacco Co.*,
    *Barbara Izzarelli v. R.J. Reynolds Tobacco Co.*

Dear Marilyn:

We are responding to your letter of March 19, 2008, in which you declined to produce pathology slides that plaintiffs' expert, Dr. Alan Feingold, relies upon for his opinions in the above-captioned cases. As set forth below, this material is unquestionably discoverable. Because Dr. Feingold's deposition is scheduled for Monday, April 7, defendant demands that the slides be made available for its review no later than April 1. Please let us know by the close of business tomorrow whether plaintiffs and Dr. Feingold will comply with that request.

Earlier this month, Dr. Alan Feingold submitted supplemental expert reports in both *Ertman* and *Izzarelli*. In *Izzarelli*, the purpose for Dr. Feingold's supplemental expert report was to disclose the results of recent HPV testing that was conducted at Genzyme Genetics laboratories at Dr. Feingold's direction. Dr. Feingold's entire supplemental expert report is devoted to describing the process and results of this HPV testing. For example, according to his supplemental report, Dr. Feingold "selected slides for HPV staining and submitted those slides" to Genzyme Genetics, who tested Barbara Izzarelli's tissue for HPV. In addition, Dr. Feingold also selected "control slides" to be used in the HPV testing. Genzyme Genetics reported that the results of the HPV testing were negative. Dr. Feingold claims that after reviewing the Genzyme Genetics report, he, too, reviewed the various slides involved in the testing and independently concluded that they were "entirely negative" for HPV. Based on the foregoing, Dr. Feingold's opinion is that "human papilloma virus was not a causative factor in the development of Mrs. Barbara Izzarelli's laryngeal cancer."

Clearly, Dr. Feingold has considered and relies upon the pathology slides (including the control slides) that were used in the HPV testing. Furthermore, he had a direct role in choosing the slides for testing and claims that he himself has examined the stained slides and confirmed the testing results. Because Dr. Feingold has been disclosed as a testifying expert for trial, we are entitled to discover all material that he has considered and relied upon in forming his opinions. *See* FRCP 26(a)(2)(B) (requiring disclosure of all material "considered by the witness

CLI-1602968v1

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

W10E65827

JONES DAY

Marilyn Ramos, Esq.
March 27, 2008
Page 2

in forming the opinions"); *Packer v. SN Servicing Corp.*, 243 F.R.D. 39, 43 (D. Conn. 2007) (testifying experts are required to produce all documents and material they considered in forming their opinions by virtue of FRCP 26(a)(2)(B)). The fact that the "material" the expert considered in this case consists of pathology slides does not change the analysis. Just like Dr. Feingold would be required to produce copies of scientific studies that he relied upon, he is required to produce the pathology slides he relied upon. Producing copies of photomicrographs and the one-page Genzyme testing report is not sufficient. Defendant has a right to physically examine the actual slides that Dr. Feingold selected, examined, and used in the HPV testing, and which form the basis for his opinion that HPV was not the cause of Mrs. Izzarelli's laryngeal cancer. We ask that you please produce all pathology slides used in the HPV testing as soon as possible and in advance of Dr. Feingold's deposition.

In *Ertman*, the purpose of Dr. Feingold's supplemental expert report was to disclose his review of new medical records as well as new testing that was conducted on David Ertman's pathology at Dr. Feingold's direction. Dr. Feingold reports that he selected several slides containing David Ertman's pathology and submitted them to Genzyme Genetics for chromogranin A and TTF-1 testing. Genzyme provided control slides. According to Dr. Feingold's supplemental report, "Genzyme reported the chromogranin to be positive and the TTF-1 to be focally positive." Dr. Feingold then examined the slides himself and independently confirmed the results. Based on the foregoing, Dr. Feingold's opinion is that David Ertman's pathology slides "were entirely consistent with metastatic small cell lung cancer."

Again, Dr. Feingold clearly considered and relies upon the pathology slides (including the control slides) that were used in the chromogranin and TTF-1 testing. He chose which slides were to be used, examined the stained slides to confirm the testing results, and relies on the slides for his opinion that David Ertman had small cell lung cancer. Thus, defendant is entitled to physically examine the actual slides. We ask that you please produce all slides used in the chromogranin and TTF-1 testing as soon as possible and in advance of Dr. Feingold's deposition.

Contrary to your assertion, the Joint Stipulation Regarding Transfer and Use of Pathology Slides ("Stipulation") that the parties signed in these cases does *not* excuse Dr. Feingold from complying with the expert disclosure requirements under the Federal Rules of Civil Procedure. In fact, that Stipulation expressly states that "Whether results of any testing or staining, including destructive testing, are protected from disclosure to the opposing party by work-product protection shall be governed by the Federal Rules of Civil Procedure and federal law." (Stipulation, dated Nov. 27, 2007). The purpose of that Stipulation was to establish the procedure by which the hospital was to divide and distribute the pathology between the parties; nowhere does the Stipulation state that plaintiff's testifying experts can refuse to produce pathology that they rely upon for their opinions in this case.

Please note that defendant has not yet disclosed expert witnesses. Under the current scheduling order, defendant is not required to disclose its experts until April 30. Once it has, to

CLI-1602968v1

W10E65828

JONES DAY

Marilyn Ramos, Esq.
March 27, 2008
Page 3

the extent these experts have any knowledge about, and have relied upon, any pathology testing for their opinions in these cases, they will produce all related material in due course, as the Federal Rules of Civil Procedure require.

    Please advise us of your position by the close of business tomorrow, March 28, 2008. In the event that you refuse to produce such slides, we plan to move immediately to compel their production, or in the alternative, for the issuance of an order precluding Dr. Feingold from testifying regarding pathology testing.

Very truly yours,

Mark R. Seiden

cc:    David Golub, Esq.
    (Via UPS Overnight and Fax)

    Mark Belasic, Esq.
    (I/O)

    Amanda S. Jacobs, Esq.
    (I/O)

CLI-1602968v1