UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID F. ERTMAN AND<br>JANE E. ERTMAN,<br>　　　　　Plaintiffs,<br><br>V.<br><br>R.J. REYNOLDS TOBACCO COMPANY,<br>　　　　　Defendant. | CIVIL ACTION NO.<br>3:01 CV 1090 (WWE)<br><br><br><br><br><br>JUNE 23, 2008 |

## PLAINTIFFS' MEMORANDUM OF LAW

Plaintiffs submit this Memorandum of Law in support of their Motion to Determine Sufficiency of Objections to Plaintiff's Requests to Admit.

### Introduction

Plaintiffs propounded Requests to Admit to defendant R.J. Reynolds Tobacco Company ["R.J. Reynolds"] on April 1, 2008. By these requests, plaintiff has sought to narrow the issues at trial regarding causation of plaintiff David Ertman's lung cancer. Plaintiffs specifically seek to establish that Mr. Ertman had a primary pulmonary small cell cancer which is evidenced by testing of the pathology taken from Mr. Ertman and by the presence of certain antibodies that are indicative of pulmonary small cell cancer.

Responses to these Requests will avoid the unnecessary time, expense and waste of judicial resources required to have witnesses and experts testify at trial about matters that can be readily admitted. Concerned Citizens of Belle Haven v. Belle Haven Club, 223 F.R.D. 39, 44 (D.Conn. 2004) (Fitzsimmons, M.J.). Plaintiffs are clearly permitted by Rule 36 to assert these Requests, and the Requests are timely.

Defendant's objections to the Requests, attached as Exhibit A, should be overruled, as discussed more particularly below, and defendant should be ordered to file a proper response within two (2) weeks of entry of the Court's order.

**Plaintiffs' Requests**

Plaintiffs' requests for admission involve only two issues related to causation: Is there pathological evidence of metastatic small cell cancer in tissue taken from David Ertman during his initial in-patient hospital stay [Requests 1 and 2[1]]; is there pathological evidence of small cell lung cancer from various staining techniques used by pathologists to make a determination of small cell lung cancer [Requests 3, 4 and 5[2]]; did Mr. Ertman suffer from paraneoplastic

---

[1] These Requests state (see also Exhibit A attached to Motion):
  1. There is pathological evidence of metastatic small cell cancer in lymph node tissue taken from David Ertman during his inpatient stay at Hospital of Saint Raphael's, which tissue is referenced in the Hospital pathology report dated June 17, 1999 (hereafter "lymph node tissue").

  2. There is pathological evidence of metastatic small cell cancer in David Ertman's lymph node tissue which defendant R.J. Reynolds Tobacco Company received from the Hospital of St. Raphael's in accordance with the Joint Stipulation and Order Regarding Transfer and Use of Pathology Slides entered by the Court in this case on November 29, 2007.

[2] These Requests state (see also Exhibit A):
  3. There is pathological evidence from Chromogranin-A staining of David Ertman's lymph node tissue that Mr. Ertman had small cell lung cancer.

  4. There is pathological evidence from TTF-1 staining of David Ertman's lymph node tissue that Mr. Ertman's cancer was a primary pulmonary malignancy.

  5. There is pathological evidence from immunohistochemical staining of David Ertman's lymph node tissue that Mr. Ertman had a primary pulmonary small cell cancer.

2

neurological disease prior to his diagnosis of lung cancer [Requests 6 and 7[3]]; whether the antibodies indicative of paraneoplastic neurological disease in concurrence with lung cancer constitute evidence that Mr. Ertman's lung cancer was small cell lung cancer [Request 8[4]].

Each of plaintiffs' requests here is direct, simple and limited to one factual issue so that it can be easily admitted or denied. Plaintiffs' requests, therefore, are proper in form. Thalheim v. Eberheim, 124 F.R.D. 34, 35 (D.Conn. 1988); Herrera v. Scully, 143 F.R.D. 545, 549 (S.D.N.Y. 1992); 4A.J. Moore, *Federal Practice* ¶ 36.05[2] at 51 (1987). With respect to the subject matter of plaintiffs' requests, all matters relevant to the claims in the action are permissible under Rule 36, if properly propounded. Fed.R.Civ.Pro. 26(b)(1); 36(a). Defendant cannot deny that causation is a critical element in plaintiffs' case, and that the causal connection between defendant's product and the injuries sustained by David Ertman will be the subject of much expert testimony at trial.[5] The requests to admit, which seek to narrow the causation issue for

---

[3] These Requests state (see also Exhibit A):
6. Prior to Mr. Ertman's diagnosis of lung cancer at Hospital of St. Raphael's in June 1999, Mr. Ertman suffered from paraneoplastic neurological disease.

7. In June 1999, serum taken from Mr. Ertman by Hospital for St. Raphael's was found by Dr. Steven Vernino of the Mayo Clinic in Rochester, Minnesota, to contain high titer type I anti-neuronal nuclear autoantibodies (ANNA-1, also known as "Hu").

[4] This Request states (see also Exhibit A):
8. ANNA-1 or "Hu" antibodies in concurrence with lung cancer is evidence that Mr. Ertman's lung cancer was small cell lung cancer.

[5] Defendant, in its Answer, Defenses and Jury Demand, dated July 31, 2001, has asserted at least three affirmative defenses on the issue of causation:

Fifth Defense: The conduct alleged in the Complaint does not constitute a proximate cause of plaintiffs' alleged injuries for which they seek damages from Reynolds.

3

purposes of trial, therefore, are entirely permissible under the rule. <u>Marchand v. Mercy Medical Center</u>, 22 F.3d 933, 938-39 (9th Cir. 1994) (causation is critical element and requests to admit addressed to causation are proper); <u>Hart v. Dow Chemical</u>, 1998 WL 151815 (N.D.Ill. 1998) (same) (attached as Exhibit B).

**Defendant's Responses**

R.J. Reynolds asserts several objections to the Requests which plaintiffs will address in turn.[6] Initially, defendant argues that the Requests to Admit in their entirety are untimely because, pursuant to the Motion for Extension of the Scheduling Order dated June 12, 2007 (which last addressed "fact discovery"), the deadline for written fact discovery was September 20, 2007. Plaintiff does not agree that "fact discovery," as incorporated in the parties' several joint motions for extension of the pretrial scheduling order, includes requests for admission. The parties never discussed requests for admission, the joint motions never mentioned such requests, and the scheduling orders entered by the Court did not address them.

By way of background, over the course of this litigation, the parties jointly filed several motions regarding scheduling of discovery and other matters, the most recent of which was filed

---

<u>Thirty-third Defense</u>: Plaintiffs' claims are barred to the extent the injuries ... resulted from a pre-existing and/or unrelated medical condition and/or idiosyncratic reaction to Reynolds' cigarettes and not from any act or omission on behalf of Reynolds or defects in its cigarettes.

<u>Forty-first Defense</u>: The plaintiff's injuries were the result of intervening or superseding events, factors, occurrences or conditions, including multiple cause or risk factors for alleged "smoking-related' diseases.

[6] Where R.J. Reynolds has asserted the same objections to each of the Requests, plaintiffs will address the objections together to avoid needless repetition.

4

on February 29, 2008 (Motion #119). At no time during the history of this litigation have the parties ever discussed a deadline for the filing of requests for admission. [Affidavit of Marilyn J. Ramos, submitted with this Motion, ¶2]. None of the scheduling orders issued by the Court contained a deadline for the filing of requests for admission.

In addition, it was not until the middle of January, 2008 that the parties' experts had the opportunity to review plaintiff's pathology pursuant to a Stipulation that was entered by the Court on November 29, 2007. Thus, plaintiff could not have served the Requests to Admit on this particular causation issue within the time limits mentioned by defendant in its objections, as defendant would not have had all the pathology in its possession at that time.

Finally, the latest deadline set by the Court for the completion of discovery is June 30, 2008. [CMECF Notice attached as Exhibit C]. Since plaintiff served the Requests to Admit on April 1, 2008, with responses due on May 1, 2008, plaintiff's requests were well within the June 30 deadline.

"[R]equests for admissions are not discovery devices in the traditional sense. ... as they "serve the distinctly different purpose of assisting the parties and the court to narrow the factual issues ... either on motion or at trial." Brodeur v. McNamee, 2005 WL 1774033, at *2 (N.D.N.Y. 2005) (attached as Exhibit D). Nonetheless, "the question of whether a request for admissions should be considered a discovery device is one on which the courts, including within this circuit, are markedly divided." Id.; compare e.g. Carousel Candy Co. v. Weber, 38 B.R. 927, 935-36 (Bankr. E.D.N.Y. 1984) with Revlon Consumer Products Corp. v. Estee Lauder Companies, Inc., 2001 WL 521832, at *1 (S.D.N.Y. 2001) (both cases attached as Exhibit E).

5

One court noted that since the Second Circuit had not yet ruled on the matter, "the important issue ... is whether Requests for Admissions were contemplated as part of discovery in the [previously held] scheduling conference." Greenfield v. Memorial Sloan Kettering Hospital, 2000 WL 351395, at *5 (S.D.N.Y. 2000) (attached as Exhibit F). The court held that since the subject of requests for admissions did not arise at the scheduling conference, nor were they contemplated, "the Requests for Admissions were not deemed part of the discovery schedule" and, accordingly, defendants were ordered to respond to the requests even though they were served 40 days after the close of discovery. Id.

In this case, on the contrary, the Requests *were* served prior to the close of discovery. Moreover, defendant's responses would have been due well within the discovery deadline. As mentioned above, the parties did not discuss including requests for admission within the proposed scheduling orders that were submitted to the Court, and, accordingly, defendant's objection that the requests should have been served by September 20, 2007 is unavailing.

Defendant also objects to all Requests on the basis that they "seek[] information, data, opinions, or theories of counsel that are protected by the attorney work-product privilege."[7] As the courts in this Circuit have held repeatedly, the attorney work-product privilege only applies to documents or tangible things. "Three conditions must be met to earn work product protection. The material must (1) be a *document or a tangible thing*, (2) that was prepared in anticipation of

---

[7] The party asserting attorney work-product "bears the burden of establishing its applicability to the case at hand." In re Veeco Instruments, Inc. Sec. Litig., No. 05-MD-01695, 2007 WL 724555, at *4 (S.D.N.Y. 2007) (attached as Exhibit H).

6

litigation, and (3) was prepared by or for a party, or by or for his representative." Lagace v. New England Cent. Railroad, slip copy, 2007 WL 2889465, at *2 (D.Conn. 9/28/2007) (Martinez, M.J.) (attached as Exhibit G); Strauss v. Credit Lyonnais, S.A., 242 F.R.D. 199, 230 (E.D.N.Y. 2007); In re Veeco Instruments, Inc. Sec. Litig., No. 05-MD-01695, 2007 WL 724555, at *5 (S.D.N.Y. 2007) (attached as Exhibit H). There are no documents or tangible things involved here, and plaintiffs are at a loss as to how to respond to such a frivolous argument.

Defendant next argues that all Requests are objectionable because they "seek[] facts and opinions held by Reynolds' non-testifying, consulting experts, which are not discoverable under Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure and related case law," and that plaintiffs "cannot show exceptional circumstances under which it is impracticable for them to obtain facts or opinions on the same subject by other means." Reynolds argues in essence that the causation issues plaintiffs seek to have admitted or denied can only be obtained by plaintiffs from defendant's testifying experts "[i]f and when any of Reynolds' testifying experts rely upon, and have any opinions concerning" the subject of plaintiffs' requests. Reynolds further argues, in response to Requests to Admit 1-5 and 7, that since plaintiff also has substantially equivalent pathology tissue, plaintiffs can conduct their own testing of the tissue and serum involved. These are novel interpretations of Rule 36.

Reynolds cannot deny that it has considered other medical causes of David Ertman's lung cancer, including the possibility that it was not a primary lung cancer (but rather a metastatic cancer) and that it was not a small cell cancer (but rather a different cancer less likely to be associated with cigarette smoking). Plaintiffs' experts have concluded that Mr. Ertman suffered

from a primary small cell cancer of the lung, and that he also suffered from paraneoplastic neurological disease which is caused by small cell lung cancer. Defendant has copies of the experts' reports and the medical records. Plaintiff has the right to determine prior to the close of discovery whether defendant will admit that plaintiff's lung cancer was a primary cancer, that it was small cell lung cancer, and that Mr. Ertman suffered from paraneoplastic neurological disease.

The fact that defendant may have consulted with non-testifying experts about the causation issues that are the subject of the Requests to Admit, or that defendant's testifying experts may not render opinions directly on these subjects is totally irrelevant. Defendant can attack plaintiffs' experts' opinions on these subjects without ever disclosing any experts of its own.

Most importantly, plaintiffs are not asking about defendant's non-testifying experts' opinions. They seek to narrow defendant's defenses on the issue of causation. [See Note 5 supra listing three of defendant's affirmative defenses on causation]. Accordingly, plaintiffs' Requests are proper. Cf. Federated Mutual Ins. Co. v. Mazda Motor of America, Inc., 2006 WL 2583051, at *5 (N.D. Fla. 2006) (plaintiff's requests for admission as to conversations between plaintiff and defendant's non-testifying expert that went to defendant's knowledge of plaintiff's need to inspect the subject vehicle alleged to have caused a fire, were proper where requests did not go to any *opinions* of the expert and would assist plaintiff at trial in explaining why plaintiff could not produce the subject vehicle or fully investigate the cause of the fire) (attached as Exhibit I).

Defendant also objects to answering the Requests on the ground that plaintiffs have substantially equivalent pathology material from which they can conduct their own testing. As

8

Magistrate Judge Fitzsimmons noted in <u>Concerned Citizens of Belle Haven</u>: "This objection misses the point of requests for admission, which is to narrow the scope of contested issues at trial." 223 F.R.D. at 45 (addressing defendants' arguments that the request improperly seeks information which is "equally available" to plaintiff and is derived from public records, and that defendants have no obligation to do plaintiff's "homework").

Finally, the defendant argues that the word "high" in Request 7 is subjective and vague. Request 7 states: "In June 1999, serum taken from Mr. Ertman by Hospital for St. Raphael's was found by Dr. Steven Vernino of the Mayo Clinic in Rochester, Minnesota, to contain high titer type 1 anti-neuronal nuclear autoantibodies (ANNA-1, also known as 'Hu')." This statement was taken from Dr. Allan Feingold's report (one of plaintiffs' experts on causation) referring to a report from Dr. Vernino which is attached as Exhibit J. The word "high" refers to the titer of 1:3,840 which was positive for this antibody. If Defendant can admit that a titer of 1:3,840 is high, as that word is used in the medical community, it should do so.

Where the defendant has the information necessary, whether through discovery, independent verification or otherwise, "to put it in a position to make a judgment" as to the requests at issue, the defendant should be required to appropriately respond. <u>Lumpkin v. Meskill</u>, 64 F.R.D. 673, 678-79 (D.Conn. 1974). As the Report of the Advisory Committee on Rules states (in reference to the 1970 amendments to Rule 36(a)):

> The rule as revised adopts the majority view, as in keeping with a basic principle of the discovery rules that a reasonable burden may be imposed on the parties when its discharge will facilitate preparation for trial and ease the trial process. It has been argued against this view that one side should not have the burden of 'proving' the other side's case. The revised rule requires only that the answering party make

> reasonable inquiry and secure such knowledge and information as are readily obtainable by him. *In most instances, the investigation will be necessary either to his own case or to preparation for rebuttal.* Even when it is not, the information may be close enough at hand to be 'readily obtainable.' Rule 36 requires only that the party state that he has taken these steps.

48 F.R.D. 487, 533 (1970).

Defendant is clearly in a position – 7 years after suit was commenced – to admit or deny whether there is pathological evidence of small cell lung cancer, whether there is pathological evidence that the cancer was a primary cancer, and whether there is medical and pathological evidence that Mr. Ertman had paraneoplastic neurological disease. R.J. Reynolds has more information than most about the causal connection between smoking and disease, and about other possible causal connections to David Ertman's cancer claims. Given the number of years spent researching (and refuting) causation, and the number of lawsuits filed against it in recent years, the idea that R.J. Reynolds cannot respond to plaintiffs' requests without expert discovery or before it has disclosed its own experts is incredible. It has a wealth of information at its fingertips and can come to some judgment about the type of cancer Mr. Ertman had.

Instead, by asserting nonrelevant objections, it has flagrantly disregarded the mandates of Rule 36 and the purposes for which it was instituted – which are to "eliminat[e] the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact." Concerned Citizens of Belle Haven, 223 F.R.D. at 44; Thalheim v. Eberheim, 124 F.R.D. 34, 35 (D.Conn. 1988).

By its failure to fairly and properly respond to plaintiff's Requests to Admit, defendant has forced plaintiffs' counsel to expend significant time and expense in preparing this motion, it has

wasted the time of the Court, and it has prevented plaintiffs from obtaining information they are entitled to and which could effectively reduce their burden at trial.

## Conclusion

Accordingly, plaintiffs ask that the defendant's objections be overruled and that defendant be compelled to respond to the Requests to Admit in compliance with Rule 36 within two (2) weeks of the Court's order.

PLAINTIFF,

By: _____
David S. Golub (ct00145)
Jonathan M. Levine (ct07584)
Marilyn J. Ramos (ct11433)
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
Stamford, CT 06901
(203) 325-4491

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2008, a copy of the foregoing Motion to Determine Sufficiency of Objections to Plaintiffs' Requests to Admit was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

MARILYN J. RAMOS ct11433
SILVER GOLUB & TEITELL LLP
184 Atlantic Street
P. O. Box 389
Stamford, CT 06904
Telephone: 203-325-4491
Fax: 203-325-3769
E-mail: mramos@sgtlaw.com