Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.))

Page 1

In re Veeco Instruments, Inc. Securities Litigation
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re VEECO INSTRUMENTS, INC. SECURITIES LITIGATION.
This Document Relates to all Actions.
No. 05-MD-01695 (CM)(GAY).

March 9, 2007.

DECISION AND ORDER DENYING LEAD PLAINTIFF'S MOTION TO VACATE AND REVERSE THE DISCOVERY ORDER OF MAGISTRATE JUDGE GEORGE A. YANTHIS DATED JANUARY 24, 2007

McMAHON, J.

*1 This motion arises in the context of litigation that followed the discovery of improper accounting transactions at the TurboDisc division of Veeco Instruments, Inc. and the restatement of the company's financial statements previously issued for the three quarterly periods and nine months ending in September 2004. Lead Plaintiff Steelworkers Pension Trust ("lead plaintiff") appeals a discovery order of Magistrate Judge Yanthis dated January 24, 2007, which denied lead plaintiff's motion to compel discovery of certain documents on the grounds that the documents withheld are protected by work product privilege and that lead plaintiff has not demonstrated a substantial need for the documents.

Lead plaintiff contends that Judge Yanthis' decision was clearly erroneous or contrary to law for a wide array of reasons, including, but not limited, to a purportedly incorrect interpretation of the work-product doctrine, an inadequate evidentiary basis for ruling that the requested documents are protected, and a failure to recognize lead plaintiff's substantial need for the documents withheld.

On the basis of these purported errors, lead plaintiff moves this court to vacate and reverse Judge Yanthis' order of January 24, 2007. For the reasons set forth more fully below, lead plaintiff's motion is denied.

Facts

On August 21, 2006, lead plaintiff moved to compel documents created in the course of an internal investigation of Veeco's TurboDisc division. Specifically, lead plaintiff sought "all reports, workpapers, interview notes, memoranda, correspondence, and any other documents, electronic or otherwise created or prepared by Veeco, Jefferson Wells International, Inc., outside counsel Kaye Scholer LLP, Veeco's outside auditor Ernst & Young LLP, or anyone else in connection with the investigation of TurboDisc accounting and the restatement of Veeco's financials for the first, second, and third quarters and first nine months of 2004, referenced in, *inter alia,* Veeco's February 11, 2005 and March 16, 2005 press releases."(Lead Pl. Aug. 21 Br. at 1.)

The materials in question were created during the course of an investigation led by Kaye Scholer and Jefferson Wells following the discovery of potentially improper accounting entries relating to inventory assets at Veeco's TurboDisc division. (Rein Aff at ¶ 5.) The internal investigation was prompted by evidence that potentially im-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                            Page 2
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.))

proper accounting entries had been made relating to the inventory assets on TurboDisc's balance sheet. (*Id.* at ¶ 6.) After consulting with Veeco's outside securities counsel, Rory Greiss of Kaye Scholer, Veeco determined that if substantiated, the potentially improper accounting transactions could result in litigation and a restatement. *Id.* Thereafter, on January 17, 2005, Veeco's Audit Committee authorized the special retention of Kaye Scholer to conduct an internal investigation concerning the potential accounting errors at TurboDisc. (*Id.* at ¶ 10; Greiss Decl. at ¶ 6.) The Audit Committee further authorized Kaye Scholer to retain the accounting services of Jefferson Wells, a firm with experience in assisting internal investigations by providing forensic accounting and account reconstruction services. (Rein Aff. at ¶ 10; Greiss Decl. at ¶ 6.) The following day, Kaye Scholer retained Jefferson Wells to assist its lawyers in reviewing and analyzing potentially improper accounting transactions at TurboDisc. (Rein Aff. at ¶ 10; Greiss Decl. at ¶ 6.)

*2 In his decision dated January 24, 2007, Judge Yanthis concluded that materials created in connection with this investigation were protected work product under Rule 26(b)(3). (Order at 3.) In doing so, he ruled that the record showed that the documents were created because of anticipated litigation, would not have been prepared by Veeco in the ordinary course of business, and, absent the threat of litigation, would not have been prepared in a form substantially similar to that prepared by Kaye Scholer and Jefferson Wells. (*Id.*) In particular, Judge Yanthis relied on the Declaration of Rory A. Greiss, a partner at Kaye Scholer, to find that:

Kaye Scholer has served as outside securities counsel to Veeco Instruments, Inc. since 1993. After Veeco's internal auditing personnel discovered potentially erroneous or improper accounting transactions in Veeco's TurboDisc business division, members of Veeco's management contacted Greiss for the purpose of obtaining legal advice. Greiss believed that a financial restatement might be required, which Greiss expected would likely subject Veeco to litigation. Veeco authorized Kaye Scholer to conduct an internal investigation and to retain Jefferson Wells, a forensic accounting firm, to assist in the investigation. Greiss, and other members of Kaye Scholer, supervised and directed the work of Jefferson Wells, all of which was done for the purpose of assisting Kaye Scholer in providing legal advice to Veeco regarding its financial statements, past and future disclosures and possible litigation arising therefrom. (*Id.* at 2.)

In addition, Judge Yanthis relied on the Affidavit of John F. Rein, Veeco's Executive Vice President, Chief Financial Officer and Secretary, who, the court noted, averred that "the documents at issue were prepared because of the anticipated litigation and 'would not have been prepared by Veeco in the ordinary course of business, nor would Veeco prepare work in a form substantially similar to that prepared by Kaye Scholer or Jefferson Wells.' " (*Id.* at 3.) Based on this evidence, Judge Yanthis concluded that the documents at issue are eligible for protection under the work product doctrine. (*Id.*)

Judge Yanthis also found that lead plaintiff had failed to demonstrate the substantial need required to overcome the work product privilege because defendants had already produced documents on the various subject matters and during the same period covered by the privileged documents. *Id.* In particular, Judge Yanthis found that:

Defendants have already produced voluminous amounts of non-privileged accounting-related documents, including: documents prepared by Veeco's own financial professionals and internal and external auditors concerning TurboDisc's potentially improper accounting transactions; documents related to Veeco's internal audit of TurboDisc; documents reflecting Veeco's own investigation into TurboDisc's financial controls and the accuracy of its financial statements; and documents prepared by Veeco's financial professionals concerning the preparation of its financial restatement. (*Id.*)

Not Reported in F.Supp.2d                                                                                                      Page 3
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.))**

*3 For the foregoing reasons, Judge Yanthis denied lead plaintiff's motion to compel production of the requested documents. On February 7, 2007, lead plaintiff filed a motion in this court to vacate and reverse the order entered by Judge Yanthis.

**Standard of Review**

A District Court reviewing a Magistrate Judge's non-dispositive pretrial orders, such as discovery orders, may modify or set aside any part of that order if it is clearly erroneous or contrary to the law. Fed.R.Civ.P. 72(a); *see also Sheikhan v. Lenox Hill Hospital*, 98 Civ. 6468, 1999 WL 386714, *1 (S.D.N.Y. June 11, 1999) (Rule 72(a) standard applies to discovery orders). Findings are clearly erroneous when the reviewing court is firmly convinced the lower court decided an issue in error. *See, e.g., Mathias v. Jacobs*, 167 F.Supp.2d 606, 622 (S.D.N.Y.2001). An order may be deemed contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure."*Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (N.D.N.Y.2000). The party seeking to overturn a magistrate judge's decision carries a heavy burden. *Citicorp v. Interbank Card Ass'n*, 87 F.R.D. 43, 46 (S.D.N.Y.1980).

**Discussion**

*1. Judge Yanthis Applied the Correct Legal Standard in Determining that the Requested Documents are Protected by the Work Product Doctrine.*

Lead plaintiff's overarching contention on this motion is that Judge Yanthis should have given greater and, in fact, dispositive weight to the non-litigation purposes for which the withheld documents were prepared. Defendants respond that lead plaintiff misconceives or mischaracterizes the applicable law. The parties strenuously dispute the proper interpretation of the controlling case on the work product doctrine in this circuit: *United States v.. Adlman*, 134 F.3d 1194, 1196 (2d Cir.1998). I conclude that lead plaintiff's challenge to Judge Yanthis' order is based on an erroneous reading of that case.

The work product doctrine is codified in Fed.R.Civ.P. 26(b)(3), which provides that a party is not entitled to obtain discovery of "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" unless a showing of substantial need and lack of undue hardship is made. The doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye towards litigation,' free from unnecessary intrusion by his adversaries."*United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir.1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)); accord *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 383-84 (2d Cir.2003). Though the work product doctrine protects both factual and opinion work product, the latter-defined as "the attorney's mental process," *Adlman*, 134 F.3d at 1197-is considered to lie "[a]t [the] core" of the doctrine, *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), and therefore receives "special protection not accorded to factual material."*Adlman*, 134 F.3d at 1197.

*4 The party asserting work product protection "bears the burden of establishing its applicability to the case at hand."*In re Grand Jury Subpoenas*, 318 F.3d at 384 (citing cases). This includes demonstrating that the doctrine applies and that it has not been waived. See, e.g., *RLS Assocs., LLC v. United Bank of Kuwait*, PLC, 2003 WL 1563330, at *3 (S.D.N.Y.Mar.26, 2003); *Bank of America, N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 4
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.))**

(S.D.N.Y .2002); *Resolution Trust Corp. v. Mass. Mut. Life Ins. Co.,* 200 F . R.D. 183, 188 (W.D.N.Y.2001). The burden is a "heavy one," *In re Grand Jury Subpoenas,* 318 F.3d at 384.

Three conditions must be fulfilled in order for work product protection to apply. "The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative.'"*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,* 2002 WL 31556382, at *4 (S.D.N.Y.Nov.15, 2002) (quoting *In re Grand Jury Subpoenas Dated December 18, 1981 & January 4, 1982,* 561 F.Supp. 1247, 1257 (E.D.N.Y.1982)) (citations omitted); accord *SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props., LLC,* 2002 WL 1455346, at *2 (S.D.N.Y. July 3, 2002) (citation omitted). The core dispute in this case focuses on the second element: whether the documents at issue were prepared "in anticipation of litigation."

A document is prepared in anticipation of litigation if " 'in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained because of the prospect of litigation.' " *Adlman,* 134 F.3d at 1202 (emphasis in original) (quoting 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure* § 2024, at 343 (1994)).*Adlman* established that documents with a dual purpose-meaning that they were prepared both for litigation and business uses-may be protected under Rule 26(b) (3).*Adlman,* 134 F.3d at 1195. Whether there is work product protection turns on whether the material "would have been prepared irrespective of the expected litigation ..." *Id.* at 1204.Indeed, even where "[t]here is little doubt under the evidence that [a party] had the prospect of litigation in mind when it directed the preparation of the [document] ...," *id.* at 1204, or that "such documents might [also] help in preparation for litigation," *id.* at 1202, work product protection is not available for documents "that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation." *Id.;* accord *Int'l Design Concepts v. Saks Inc.,* 2006 WL 1564684, at *1 (S.D.N.Y. June 6, 2006); *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.,* 215 F.R.D. 466, 474-75 (S.D.N.Y.2003); *Stephenson Equity Co. v. Credit Bancorp, Ltd.,* 2002 WL 59418, at *2 (S.D.N.Y.Jan.16, 2002).

*5 Most significantly for the present case, in holding that a document is created "in anticipation of litigation" when it would not have been created in substantially similar form but for the prospect of litigation, the *Adlman* court unequivocally rejected an alternative, more stringent standard. Other courts-including some district courts in the Second Circuit-had previously held that a document merits protection as work product only if it is prepared principally or exclusively to assist in litigation. *See e.g. United States v. Davis,* 636 F.2d 1028 (5th Cir.); *In re Kidder Peabody Sec. Litig.,* 168 F.R.D. 459, 462, 466 (S.D.N.Y.1996).*Adlman* concluded that such a restrictive reading is unwarranted by the plain language of the statute and threatens to deny protection to documents that implicate key concerns underlying the work-product doctrine. 134 F.3d at 1200.

Judge Yanthis did not misapply the *Adlman* standard; it is lead plaintiff who refuses to accept what that standard means. Under *Adlman,* a document created for two purposes-a business purpose as well as a litigation purpose-is protected under the work product doctrine as long as the document would not have been prepared in substantially similar form if not for the prospect of litigation. 34 F.3d at 1195. As long as that standard is met, the document is eligible for protection under Rule 23(b)(3) even if preparation for litigation is not the document's primary purpose.

Contrary to lead plaintiff's contention, Judge Yanthis was not required under *Adlman* to consider whether the documents were created in part for some non-litigation purpose. (Pl. Br. at 3.) Indeed, as the *Adlman* court explicitly instructs, "The fact that a document's purpose is business-related appears irrelevant to the question whether it should be protected under Rule 26(b)(3)."134 F.3d 1194, 1200. Thus, Judge Yanthis' focus on whether the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.))**

documents were created "because of" the prospect of litigation, and would not have been created in substantially similar form but for the prospect of litigation, was entirely proper as a matter of law. (Order at 2.)

Nothing in *Allied Irish Banks v. Bank of America*, --- F. Supp .2d ----, 2007 WL 177870 (S.D.N.Y. Jan 25, 2007) impugns the analysis conducted by Judge Yanthis. The *Allied Irish Banks* court confirmed that, under *Adlman*, documents prepared for both litigation and business purposes are eligible for protection under Rule 23(b)(3).*Id.* at *8. There, as here, the Magistrate Judge examined whether materials relating to an investigation into a rogue trading scheme "would have been prepared in substantally similar form irrespective of litigation."*Id.* (citing *Adlman*, 134 F.3d at 1204). Based on the evidence before him, Judge Gorenstein concluded that the investigation would have been undertaken for "business-related pruposes" and "public accountability concerns." *Id.* at *3-6.Most notably, Judge Gorenstein emphasized that AIB did not

*6 attempt to provide a witness to attest to the question of what AIB 'would have' done had there been no threat of litigation, although it is a point on which AIB potentially could offer testimony. Nor has anyone from AIB affirmatively asserted that the Report and its underlying materials would not have been commissioned had there been no potential for litigation. These lacunae certainly militate against recognizing work product protection. *Id.* at *10.

Contrary to lead plaintiff's assertion (Pl. Br. at 15-16), Judge Gorenstein in *Allied Irish Banks* engaged in exactly the same analysis that Judge Yanthis conducted here: he decided whether the documents were created because of anticipated litigation, and whether the documents would have been prepared in substantially similar form but for the prospect of that litigation. That Judge Gorenstein reached a different result based on different evidence falls woefully short of establishing clear error in the present case.

Lead plaintiff's reliance on *Ramsey v. NYP Holdings, Inc.*, 2002 WL 1402055 (S.D.N.Y. June 22, 2002) is similarly unavailing. In that case, the court found that the parents of murder victim Jon Benet Ramsey, who had themselves fallen under suspicion, would not be able to claim work product protection with respect to documents prepared during an investigation into their daughter's death. Unlike the present case, however, the parents asserting work product privilege had entirely neglected to address the issue of whether they would have undertaken the investigation absent the prospect of prosecution and therefore failed to carry their burden of proof. *Id.* at *11.

Finally, lead plaintiff's argument that Judge Yanthis committed clear error by holding that documents created to meet public filing requirements are eligible for protection as work product under Rule 23(b)(3) has been waived. *See Morgan v. Barnhart*, 2005 WL 2338709 (S.D.N.Y.2005). Lead plaintiff never argued this ground for compelling production of the requested documents in any of its submissions to Judge Yanthis or at the January 11, 2007 hearing.

*2. Judge Yanthis' Findings of Fact are Supported by Competent Evidence and are Not Clearly Erroneous*

Lead plaintiff further contends that Judge Yanthis' findings of fact are unsupported by the evidence. In particular, lead plaintiff asserts that Judge Yanthis erred in concluding that the Jefferson Wells documents were created for the sole purpose of providing legal advice to Veeco. Lead plaintiff also contends that Judge Yanthis erred in failing to rule on plaintiff's request for documents prepared by Veeco itself in connection with the Kaye Scholer/ Jefferson Wells investigation-as opposed to documents prepared by Kaye Scholer or Jefferson Wells. Finally, lead plaintiff argues that Judge Yanthis erred in relying solely on the Greiss and Rein affidavits for his ruling be-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.))

Page 6

cause those affidavits are purportedly conclusory, intentionally misleading, lacking in credibility, and contradicted by other evidence that the learned Magistrate Judge allegedly ignored.

*7 Lead plaintiff first attempts to convince this court that clear error has been committed by playing fast and loose with the language of Judge Yanthis' holding. As the order makes perfectly clear, Judge Yanthis never concluded that the Kaye Scholer/Jefferson Wells documents were prepared exclusively for litigation purposes; he did not disregard the ample evidence that they were also being used to adjust the company's financial statements and to make sure that proper disclosure was being made to the Securities and Exchange Commission. Judge Yanthis did conclude that the Jefferson Wells documents were created for the purpose of assisting Kaye Scholer in providing legal advice to Veeco and further that such legal advice was not limited to preparing for possible litigation and included advice concerning the company's financial statements and past and future disclosures. (Order at 2.) Plaintiff's assertion that Judge Yanthis' order contravened undisputed evidence of the various purposes for which the documents were prepared cannot withstand scrutiny.

Lead plaintiff further notes that "the Magistrate made no mention of the Veeco-prepared documents" in the Order. (Pl. Br. at 3). It would be a stretch to call the point an argument; it is burried in a veritable litany of purported errors without any supporting explanation. In his Order, Judge Yanthis indicated that the plaintiff sought and defendants had asserted work product privilge with respect to the Kaye Scholer and Jefferson Wells investigative reports, "along with the documents prepared in support of said reports."(Order at 2.) We gather that what lead plaintiff is suggesting is that Veeco prepared some documents as to which it claimed work product privilege on the ground that they were prepared for and relied upon by the attorneys leading the investigation. It appears that Judge Yanthis indeed considered those documents sought by the lead plaintiff that were prepared by Veeco to be supporting materials in the Kaye Scholer-led investigation and therefore protected on the same grounds as the Kaye Scholer and Jefferson Wells documents. Lead plaintiff proffers no argument and points to no evidence in the record that would convince this court that Judge Yanthis'ruling in this regard is clearly erroneous.

Lead plaintiff's attempts to impugn the affidavits on which Judge Yanthis based his ruling are likewise wholly without merit. The thorough and detailed affidavits of John F. Rein, Jr., Veeco's CFO and Rory A. Greiss, a partner at Kaye Scholer, bear no relation to the utterly conclusory statements courts have held to be an insufficient basis for a ruling of privilege. *See e.g. Harris v. Provident Life & Accident Ins. Co.,* 198 F.R.D. 26, 30 (N.D.N.Y.2000) (The decision of a Magistrate Judge that a document was created for a litigation purpose was clearly erroneous where circumstantial evidence created doubt regarding the reliability of a vague, two-paragraph attorney affidavit); *In re Grand Jury Subpoena dated Jan. 4, 1984,* 750 F.2d 223, 225 (2d. Cir.1984) (refusing to rule on an issue of first impression-the existence of a scholar's privilege-on the basis of attorney affidavit, which stated only that the proponent of the privilege is a doctoral candidate at SUNY, writing a dissertation entitled "The Sociology of the American Restaurant," and that, in the course of his employment as a "participant observer" at various Long Island restaurants, he has gathered information "from a variety of sources, many of whom were promised confidentiality.") In the present case, Messrs. Rein and Greiss fully fleshed out in their affidavits the factual underpinnings for defendants' claim of work product privilege. They did not rely solely on boilerplate paraphrasing of the legal standard but provided extensive background information based on their own personal knowledge. Lead plaintiff's assertion that Judge Yanthis erred by allowing defendants to discharge their burden with these two affidavits because they are merely conclusory is therefore inapposite.

*8 Lead plaintiff's related suggestion that the Rein and Greiss affidavits are somehow inadequate to support the learned Magistrate Judge's ruling because they are "self-serving" need not long detain this court. It is the nature

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.))

of the adversarial system that parties submit evidence to the court that bolsters their own positions; the fact that the Rein and Greiss affidavits do so does not, in and of itself, make them less credible.

Lead plaintiff's various contentions that the affidavits "defy credulity," are intentionally misleading, and are contradicted by other evidence in the record are equally unavailing. All are predicated to a greater or lesser extent on plaintiff's misinterpretation of the *Adlman* standard.

With respect to the Rein affidavit, lead plaintiff argues as follows: Most of the documents at issue are workpapers prepared to correct the TurboDisc accounting records. Mr. Rein asserted that these documents would not have been prepared by Veeco in the ordinary course of business. This is an implicit assertion by Mr. Rein that Veeco would not have corrected the erroneous TurboDisc accounting records but for the prospect of litigation, but would, instead, have sought to file false financial statements with the SEC or violated SEC regulations by failing to file its Form 10-K altogether. Thus, lead plaintiff avers, Mr. Rein's affidavit defies credulity, is intentionally misleading, and must be false.

Lead plaintiff's argument fails both factually and logically. First, lead plaintiff offers no evidence here-just as it offered no evidence below-for its underlying premise that the documents consist primarily of accounting workpapers. Judge Yanthis committed no error in finding that the requested documents were Kaye Scholer and Jefferson Wells investigative reports, along with documents prepared in support of such reports. (Order at 2.)

Second, lead plaintiff's assertion that because defendants were required to file corrected financial statements, any documents created in connection with the correction of accounting errors "would have been prepared irrespective of the prospect of litigation" rests on a logical fallacy. Lead plaintiff assumes, without citing any basis in fact, that Veeco would have been unable to correct the TurboDisc accounting records without the Kaye Scholer/Jefferson Wells materials. In fact, Mr. Rein plainly states in his affidavit that Veeco would have relied exclusively on its internal finance staff and outside auditors had it been concerned solely with correcting the TurboDisc financial records rather than with the prospect of litigation. (Rein Aff. at ¶ 11.) Plaintiffs offer no evidence to rebut this statement, and Judge Yanthis did not err in relying upon it. Indeed, it "defies credulity" to imagine that the prospect of litigation was not very much on Veeco's mind at that moment.

Third, the fact that some or even all of the documents at issue were created in part to ensure that Veeco's public disclosures were accurate does not remove them from the ambit of work product protection under *Adlman.* As explained above, the *Adlman* court concluded that the work product doctrine covers documents prepared for a dual purpose, as long as the documents would not have been prepared in substantially similar form but for the prospect of litigation. Mr. Rein and Mr. Greiss openly described the litigation as well as business purposes for creating these documents in their sworn statements and candidly admitted the documents' dual use at the hearing before Judge Yanthis. (Rein Aff at ¶ 10; Hearing Tr. at 17.) Both Mr. Rein and Mr. Greiss swore that these materials would not have been prepared in substantially similar form were it not for the prospect of litigation. (Greiss Decl ¶ 8; Rein Aff ¶ 11.) Once again, lead plaintiff offers nothing to counter this evidence but faulty logic.

*9 Fourth, Mr. Greiss' reference in his sworn statement to Jefferson Wells as a forensic accounting firm is in no way false or misleading. This description was fully supported by the deposition testimony of Thomas Vollmer of Jefferson Wells, who testified that the engagement included a "forensic review to see if there was any potential fraud in the errors that were disclosed by Veeco at Turbo Disc," as well as an accounting review. (Vollmer Tr. at 31:16-19).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 8
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.))**

In short, defendants repeatedly disclosed to Judge Yanthis the very facts lead plaintiff charges them with concealing and misrepresenting: namely the non-litigation uses to which some, most, or all of the requested documents were put. Lead plaintiff must simply accept that, under *Adlman*, that is irrelevant as long as Judge Yanthis had an adequate basis from which conclude that the requested documents would not have been prepared in a substantially similar form were it not for the prospect of litigation.

Finally, lead plaintiff argues that Judge Yanthis erred in denying their request for *in camera* review. (Pl. Br. at 13). Lead plaintiff raised *in camera* review only once before Judge Yanthis. In a footnote to its Reply Brief, lead plaintiff wrote:

To the extent that any analysis of anticipated litigation may be present within the Requested Documents, the solution demanded by Defendants, denying Plaintiffs access to the entirety of the Requested Documents, is unduly harsh and unwarranted. Rather, Plaintiffs respectfully submit that the Court can review the Requested Documents *in camera* so that any legal analysis can be redacted. (Pl. Aug. 28 Br. at 2, n. 1).

Lead plaintiff's suggestion that *in camera* review could be conducted to redact legal analysis from documents that are held to be privileged work product was based on a misapprehension of the scope of the work product doctrine, which covers factual analysis, impressions of witnesses based on their recollections and consistency with other evidence, and other matters well beyond "legal analysis." *See Upjohn Co. v. United States*, 449 U.S. 383, 399-400 (1980). Thus, Judge Yanthis did not err, much less clearly err, in denying lead plaintiff *in camera* review for the purpose of redacting legal analysis from documents covered by the work product doctrine. To the extent that lead plaintiff now argues that wholesale *in camera* review was necessary to support Judge Yanthis' finding that the requested documents are protected by the work product doctrine, that argument was not raised before Judge Yanthis and has therefore been waived.

*3. Judge Yanthis' finding that lead plaintiff failed to demonstrate substantial need for the requested documents is not clearly erroneous.*

Under Rule 26(b)(3) the immunity from discovery provided by the work product rule is conditional; the protection may be set aside if the discovering party demonstrates a sufficiently pressing need for the data. *See, e.g., Golden Trade, S.R.L. v. Jordache*, 143 F.R.D. 508, 510 (S.D.N.Y.1992). Such a showing requires proof that the inquiring party "has [a] substantial need of the materials in the preparation of [his] case and that [he] is unable without undue hardship to obtain the substantial equivalent of the materials by other means."Fed.R.Civ.P. 26(b)(3).*See, e.g., Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 12 (2d Cir.1989). Moreover, the protection accorded work-product that represents the "mental impressions, conclusions, opinions, or legal theories of an attorney,"Fed.R.Civ.P. 26(b)(3), cannot be overcome on a mere showing of substantial need. *See In re Grand Jury Proceedings*, 219 F.3d 175, 190 (2d Cir.2000). At a minimum, such material is to be protected unless a highly persuasive showing of need is made. *Adlman*, 134 F.3d at 1204;*see also Upjohn*, 449 U.S. at 401-02, 101 S.Ct. 677; Cf. *Martin Marietta Corp.*, 856 F.2d at 626 (generally opinion work-product not discoverable).

*10 As explained more fully above, Judge Yanthis concluded that lead plaintiff has failed to demonstrate the substantial need necessary to overcome work product privilege in the present case because defendants had already produced "voluminous amounts of non-privileged accounting-related documents."(Order at 3.) Lead plaintiff contends that the Magistrate Judge erred in assuming that "all accounting-related documents are fungible"-in other words, failing to recognize the unique nature of the withheld documents as compared to those that had already been produced; misconceiving the nature of lead plaintiff's claims; and ignoring lead plaintiff's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 9
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.))

need for discovery with respect to defendants' defenses. (Pl. Br. at 20-22). Defendants respond that the information lead plaintiff claims is essential to its case is readily available in both the "hundreds of thousands of documents already produced to lead plaintiff in this litigation and by way of deposition testimony."(Def. Br. at 21).

Defendants represented to Judge Yanthis that many of the documents sought by the lead plaintiff in its motion to compel contain the mental impressions and opinions of counsel. (See Greiss Decl. 8) Such documents would only be discoverable on a highly persuasive showing of need-a burden lead plaintiff did not carry below. Yet even assuming that all the materials in question were exclusively fact work-product, and therefore discoverable on a lesser showing, Judge Yanthis' finding that lead plaintiff failed to demonstrate substantial need is not clearly erroneous.

Lead plaintiff's key contention is that the "voluminous" documents provided by defendants do not provide evidence concerning "the nature and extent of the absence of, deficiencies in, and violations of internal controls that gave rise to the errors and how these documents relate to Defendants' scienter, including such matters as Defendants' knowledge of the deficiencies in TurboDisc's accounting system."(Pl. Br. at 20). Judge Yanthis did not erroneously ignore lead plaintiff's need for such documents because plaintiff never raised it before him. Lead plaintiff did not argue to Judge Yanthis that its need for the documents withheld is based on claims relating to deficient internal controls. Indeed, lead plaintiff made no reference in its motion to compel to the "two categories of documents" it now alleges were improperly withheld: 1) accounting documents generated by the correction and adjustment of the accounting records to prepare financial statements, and 2) "documents involving and identifying the internal controls at TurboDisc that either did not exist or which constituted internal control violations which caused the accounting errors, and which necessitated the accounting adjustments."(Pl. Br. at 6-7). Rather, in its original motion to compel lead plaintiff sought documents created

in connection with the investigation of TurboDisc accounting and the restatement of Veeco's financials for the first, second and third quarters and first nine months of 2004, references in, inter alia, Veeco's February 11, 2005 and March 16, 2005 press releases ... and as requested in Plaintiff's First Request for production of Documents Directed to All Defendants, at Requests [sic] 7-10 ... (the "Requested Documents"). Pl. Aug. 21 Br. at 1.

*11 Lead plaintiff's motion to compel thus unambiguously refers only to documents created in connection with the investigation into accounting irregularities at TurboDisc. To the extent that, on appeal, lead plaintiff's description of the "second category of documents" relating to internal controls sweeps more broadly than plaintiff's original Requests 7-10, the court must reject any attempt by the lead plaintiff to expand the subject matter of its motion to compel. Conversely, if lead plaintiff means to suggest that it has an especially acute need for those documents sought in its original motion to compel that related to internal controls, it failed to raise the argument before Judge Yanthis and has thereby waived it.

Moreover, as defendants rightly note, if lead plaintiff's claim is that defendants "knew or recklessly disregarded red flags indicating that Defendants had no reasonable basis to believe that TurboDisc's financial statements were accurate" for the first three quarters of 2004-and I stress that lead plaintiff did not make this argument in its motion to compel before Judge Yanthis-the evidence it would need to prove its case would lie in documents generated prior to the beginning of the Kaye Scholer investigation in mid-January 2005-documents with respect to which defendants have claimed no privilege, documents defendants have produced.

Lead plaintiff asserts that, "for the most part" no evidence has been produced by the defendants concerning errors relating to deficiencies in TurboDisc's accounting system that were discovered after Jefferson Wells was

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)  
(Cite as: Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.))

Page 10

hired, errors that allegedly represent almost one-half of the $10.2 million restatement and are therefore critical to plaintiff's claims. (Pl. Br. at 20). Defendants represented at the hearing before Judge Yanthis and continue to assert today that they have produced substantial quantities of non-privileged documents relating to various aspects of the restatement. Judge Yanthis agreed, and lead plaintiff's vague assertions of need for the protected documents and inability to obtain them by other means are insufficient to establish he was in error. Lead plaintiff further argues that because evidence relating to the cause of TurboDisc's accounting errors "goes to the heart of Veeco's defenses" in the litigation (Pl. Br. at 22) and Jefferson Wells was engaged to assist management in identifying the cause of those accounting errors, lead plaintiff has demonstrated substantial need for the documents. Aside from the unsupported assertion that this evidence is not available elsewhere, an assertion vigorously disputed by defendants, lead plaintiff has given this court no basis for finding clear error.

Moreover, lead plaintiff's argument that it has no access to substantially comparable evidence is belied by the fact that lead plaintiff has noticed and taken the depositions of individuals who can tesify and have testified concerning various aspects of the restatement. *See Carter v. Cornell Univ.,* 173 F.RD. 92, 95-96 (S.D.N.Y.1997). To the extent that the Kaye Scholer and Jefferson Wells work product involved interviewing witnesses, there is no indication that any of them are dead, unavailable, or would be unable to recollect the relevant information due to the passage of time. Ordering production of attorney work product where the relevant witnesses are available for deposition is exceedingly unusual. *See A.I.A. Holdings,* 2002 U.S. Dist. LEXIS 20107, at *27 (finding that a witnesses' availability for deposition defeats a claim of substantial need for work product); *Tribune Co. v. Purcigliotti,* 1998 WL 175933, at *4 (S.D.N.Y. April 14, 1998) (work product protection cannot be overcome "where persons with equivalent information are available for deposition.")

*12 Finally, lead plaintiff argued at the hearing before Judge Yanthis that it would be unfair to allow the defendants to cloak anything relating to the restatement and the cause of the accounting errors at TurboDisc with privilege simply by placing their outside counsel at the head of the investigation. Lead plaintiff suggested that they would not be able to obtain the information they seek through depositions because the defendants would invoke the same privilege with respect to witness testimony that they argue is applicable to the written work product. This contention is without merit. While lead plaintiff cannot ask the witnesses what they were asked by the Kaye Scholer attorneys (or those acting at the attorneys' behest) or what they told such individuals in interviews, plaintiff is free through depositions to ask questions pertaining to the claims and defenses in this action. In other words, plaintiffs can ask the very same questions that Kaye Scholer would have asked during their interviews- and the witnesses cannot refrain from answering on the ground that they gave answers to the same questions to Kaye Scholer. Because plaintiff has access to substantially equivalent information as that contained in the privileged documents, it has not demonstrated that it has a "substantial need" for such documents, much less that Judge Yanthis committed clear error in finding that it does not.

## CONCLUSION

For the reasons stated above, lead plaintiff's motion to vacate and reverse Judge Yanthis' order of January 24, 2007 is denied.

This constitutes the decision and order of the Court.

S.D.N.Y.,2007.  
In re Veeco Instruments, Inc. Securities Litigation  
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.)  
**(Cite as: Not Reported in F.Supp.2d, 2007 WL 724555 (S.D.N.Y.))**

Page 11

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.