UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID F. ERTMAN and JANE E. ERTMAN,<br><br>Plaintiffs,<br><br>- versus -<br><br>R. J. REYNOLDS TOBACCO COMPANY,<br><br>Defendant. | 3:01 CV 1090 (WWE)<br><br><br><br>JULY 2, 2008 |

### DEFENDANT R.J. REYNOLDS TOBACCO COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION TO DETERMINE SUFFICIENCY OF OBJECTIONS TO PLAINTIFFS' REQUESTS TO ADMIT

Plaintiffs' Motion acknowledges that their Requests to Admit are not intended to invade the attorney work-product protection which attaches to the opinions of defendant R.J. Reynolds Tobacco Company's ("Reynolds") non-testifying experts. (Plfs' Mem. at p. 8.) Yet by requesting Reynolds to supplement its responses to Requests to Admit regarding disease causation, pathologic evidence and pathology testing prior to designating its medical experts, Plaintiffs ask this Court to disregard attorney work-product protection and require Reynolds to respond to the Requests based upon the opinions held by its non-disclosed medical experts. The appropriate time for Reynolds to respond to these Requests is after it discloses its medical experts. Indeed, as explained more fully below, prior to Plaintiffs' filing of this Motion, Reynolds indicated that it was amenable to responding to Plaintiffs' Requests after it discloses its medical experts and before expert discovery closes. Given that Plaintiffs claim that sufficient responses are necessary to narrow the issues for trial (Plfs' Mem. at pp. 5, 8-9), they could hardly be prejudiced by waiting until after Reynolds' disclosure of its medical experts to receive more complete responses to the Requests. Nonetheless, Plaintiffs' counsel refused this offer and filed

this Motion compelling Reynolds to further respond immediately. At the present time, however, Plaintiffs have no grounds to compel discovery of this information.

First, Reynolds has not yet designated medical experts. Therefore, any testing or examination that Reynolds' experts have conducted on its pathology is protected work product. Fed. R. Civ. P. 26(b)(3). Furthermore, the "facts known or opinions held" by Reynolds' non-testifying experts regarding medical issues is not discoverable. Fed. R. Civ. P. 26(b)(4)(B). Until Reynolds discloses its medical experts, and until its experts state that they considered pathology or the nature of David Ertman's neurological disease, Plaintiffs are not entitled to discovery of this information.

Second, Plaintiffs have refused to produce upon reasonable terms the pathology tissue that is the subject of several of their Requests. For example, Request Nos. 3-4 ask Reynolds to admit that the pathology that Dr. Feingold, Plaintiffs' testifying expert, arranged to be tested for "chromagranin-A" and "TTF-1" shows pathological features consistent with small cell lung cancer. On June 9, Reynolds filed a motion to compel Plaintiffs to produce this pathology consistent with Rule 26. (*See* docket # 124 (Ex. 1)[1]). In a nutshell, Plaintiffs are demanding that Reynolds admit that Dr. Feingold's pathology shows certain evidence—*but they've refused to let Reynolds examine that evidence*. Reynolds, consequently, is hardly in a position to provide binding responses to Requests to Admit concerning critical issues in the case, like causation.

---

[1] All exhibits are annexed to the accompanying July 2, 2008 declaration of Reynolds' counsel, Amanda S. Jacobs, Esq.

## **RELEVANT FACTS**

*Fact Discovery Is Closed  (Sept. 2007)*

Fact discovery in this case closed nine months ago, on September 20, 2007.  (*See* Order 6/21/2007, docket # 93).  The only "exception" was for depositions of treating physicians.  (*See* Order 3/3/2008, docket # 121).  There was no similar exception for Requests to Admit.

*Distribution of Pathology  (November 2007)*

At the time of Mr. Ertman's cancer treatment and diagnosis in 1999, the treating hospital biopsied and examined only a small portion of Mr. Ertman's tissue.  There remained several blocks of Mr. Ertman's pathology that were essentially "un-used" by the hospital.  In November 2007, the parties agreed to divide this remaining pathology between them and to permit any kind of testing, including destructive testing.  (*See* Joint Stip. and Prop. Order Regarding Transfer and Use of Pathology Slides, so ordered on 11/29/07, docket # 104 (Ex. 2)).  They also agreed that whether, and to what extent, each parties' pathology testing results would be discoverable by the opposing party would be governed by the Federal Rules of Civil Procedure and federal law.  (*See id*. at ¶ 4).  As of November 30, 2007, both parties were permitted to obtain their pathology materials from the hospital.

*Dr. Feingold's Expert Reports (Sept. 2007 and March 2008)*

On September 25, 2007, Plaintiffs designated experts, including Dr. Allan Feingold, a pulmonologist from Miami.  Based upon his review of David Ertman's medical records and medical literature, Dr. Feingold's opinion is that Mr. Ertman had small cell lung cancer that was caused by his cigarette smoking.  In March 2008—several months after serving Dr. Feingold's original expert report and on the eve of his deposition—Plaintiffs served a supplemental expert report for Dr. Feingold.  (Feingold Supp. Report (Ex. 3)).  The purpose of his supplemental

report was to disclose that he had arranged for testing of Mr. Ertman's pathology, and had subsequently examined and relied upon the newly stained pathology tissue (which the parties received back in November 2007). Reynolds was surprised to receive this supplemental report, not only due to its belated timing, but also because Dr. Feingold is *not* a pathologist.[2]

According to his supplemental report, Dr. Feingold selected pathology slides and submitted them to a laboratory in New York City for immunohistochemical "chromogranin A" and "TTF-1" testing, the results of which were reportedly "positive" for chromagranin A and "focally positive" for TTF-1. (*See* Genzyme Lab Report, attached to Feingold Supp. Report (Ex. 3)). Dr. Feingold reports that he examined the slides himself and described the pathological features he observed. (*See* Feingold Supp. Report at pp. 10-15 (Ex. 3)). In addition, Dr. Feingold's supplemental report discloses that some slides were stained with hematoxylin and eosin or "H&E," which he also examined. According to Dr. Feingold, this testing and staining show pathological features that are consistent with small cell lung cancer. (*See id.* at p. 15). Plaintiffs' pathology testing was done without advance notice to, or the participation of, Reynolds.

*Plaintiffs' Refusal To Produce Dr. Feingold's Pathology (March 2008)*

Shortly after receiving Dr. Feingold's supplemental report on March 7, 2008, Reynolds' counsel asked Plaintiffs to produce the pathology slides and controls that Dr. Feingold relied upon pursuant to Rule 26(a)(2)(B). (*See* Seiden letter to Golub, 3/17/2008 (requesting production of pathology slides "as soon as possible") (Ex. 4)); (Jacobs email to Ramos, 3/19/2008 (following up on letter and re-requesting production of pathology slides) (Ex. 5)).

---

[2] As stated above, Dr. Feingold is a pulmonologist. He is not a pathologist. While not a topic for this opposition, Reynolds reserves its right to challenge the admissibility of Dr. Feingold's opinions regarding Mr. Ertman's pathology on the grounds that he is not qualified to give such opinions.

Reynolds even agreed to travel to Miami (where Dr. Feingold practices) to review and scan the pathology slides, to allow Dr. Feingold and/or Plaintiffs' counsel to be present during Reynolds' examination, to pay the reasonable travel expenses of Plaintiffs' counsel to Miami, and to disclose the name of Reynolds' consultant who would conduct the examination. Plaintiffs' counsel, however, refused Reynolds' offer. Plaintiffs' current position is that Reynolds can only *review* (*not* scan or copy) Dr. Feingold's pathology slides *during* Dr. Feingold's deposition. For a number of reasons that are more fully discussed in Reynolds' motion to compel (Ex. 1), that is inadequate.

Due to Plaintiffs' refusal to produce Dr. Feingold's pathology under reasonable terms, Reynolds' experts have been unable to finalize their opinions and Reynolds has filed a motion to compel. Further, as a result, Reynolds, with the consent of Plaintiffs, has not designated its medical experts. (Reynolds has, however, designated other experts.)

*Plaintiffs' Requests To Admit Regarding Pathology  (April 2008)*

Even though they refused to produce Dr. Feingold's pathology slides, on April 1, 2008, Plaintiffs served Reynolds with the following Requests to Admit, several of which ask Reynolds *to admit certain things about Dr. Feingold's pathology and the tests he conducted*:

> **Request No. 1**:  There is pathological evidence of metastatic small cell cancer in lymph node tissue taken from David Ertman during his inpatient stay at Hospital of Saint Raphael's, which tissue is referenced in the Hospital pathology report dated June 17, 1999 (hereafter "lymph node tissue").
>
> **Request No. 2**:  There is pathological evidence of metastatic small cell cancer in David Ertman's lymph node tissue which defendant R.J. Reynolds Tobacco Company received from the Hospital of Saint Raphael's in accordance with the Joint Stipulation and Order Regarding Transfer and Use of Pathology Slides entered by the Court in this case on November 29, 2007.
>
> **Request No. 3**:  There is pathological evidence from Chromogranin-A staining of David Ertman's lymph node tissue that Mr. Ertman had small cell lung cancer.

**Request No. 4**:  There is pathological evidence from TTF-1 staining of David Ertman's lymph node tissue that Mr. Ertman's cancer was a primary pulmonary malignancy.

**Request No. 5**:  There is pathological evidence from immunohistochemical staining of David Ertman's lymph node tissue that Mr. Ertman had a primary pulmonary small cell cancer.

**Request No. 6**:  Prior to Mr. Ertman's diagnosis of lung cancer at Hospital of St. Raphael's in June 1999, Mr. Ertman suffered from paraneoplastic neurological disease.

**Request No. 7**:  In June 1999, serum taken from Mr. Ertman by Hospital for St. Raphael's was found by Dr. Steven Vernino of the Mayo Clinic in Rochester, Minnesota, to contain high titer type I anti-neuronal nuclear autoantibodies (ANNA-1, also known as "Hu").

**Request No. 8**:  ANNA-1 or "Hu" antibodies in concurrence with lung cancer is evidence that Mr. Ertman's lung cancer was small cell lung cancer.

Reynolds responded to these Requests with objections, including that (1) they were untimely because fact discovery was closed, (2) Reynolds had not designated experts, thus any examination or testing of Reynolds' pathology was protected work product, and (3) Plaintiffs had refused to produce Dr. Feingold's pathology, thus Reynolds was not in a position to evaluate it in Requests to Admit.  (*See* Reynolds' Responses to Pls.' Requests, dated May 1, 2008 (Ex. 6)).

*Plaintiffs Refuse Reynolds' Offer to Supplement its Responses to the Requests After Reynolds Discloses its Medical Experts (June 20, 2008)*

On June 20, 2008 (three days before Plaintiffs filed this motion), Reynolds' counsel informed Plaintiffs' counsel that Reynolds *would answer* their Requests after completing the following three steps:  (i) examining the pathology relied upon by Dr. Feingold, (ii) deposing Dr. Feingold, and (iii) designating its medical experts, provided Plaintiffs agreed that Reynolds would be able to serve an equal number of Requests upon Plaintiffs.  (*See* Jacobs Decl. at ¶ 3; *see also* Jacobs email to Ramos, 6/21/2008 (Ex. 8); Jacobs letter to Ramos, 6/23/2008 (Ex. 9)).

Reynolds' proposal would not jeopardize Plaintiffs' stated goal of narrowing the issues for trial. Nonetheless, Plaintiffs' counsel refused this offer and filed the current motion. (*See* Ramos email to Jacobs, 6/20/2008 (Ex. 7)).

## ARGUMENT

I. **Because Reynolds Has Not Designated Medical Experts, Its Testing, Review, and Opinions of Pathology Is Protected Work Product Under Rules 26(b)(3) and (b)(4)(B).**

There are two interrelated Federal Rules of Civil Procedure—Rule 26(b)(3) and 26(b)(4)(B)—that provide that Plaintiffs are not currently entitled to the information and opinions they seek in their Requests.

   A.   **Requests Seek Protected Work Product**

Under Rule 26(b)(3), documents and other materials prepared for litigation by a party or a party's representative are not discoverable. This is known as the "work product doctrine." Both facts and opinions are protected by the work product doctrine. *See Doe v. United States*, 282 F.3d 156, 161 (2d Cir. 2002). The doctrine applies to preparation not only by lawyers but also to hired consultants. *Id.*

An exception to the work product doctrine exists only if the opposing party can show "substantial need" for the materials, and that they are "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). Even when this showing is made, however, the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" are nonetheless protected. *See id.*

The doctrine was established in order "to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye towards litigation,' free from

unnecessary intrusion by his adversaries." *United States v. Aldman*, 134 F.3d 1194, 1996 (2d Cir. 1998). "How a party, its counsel and agents choose to prepare their case, the efforts they undertake . . . is not factual information to which an adversary is entitled." *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 231 (E.D.N.Y. 2007).

Scientific testing that is conducted by a party's consultants in preparation for litigation or trial is protected work product. *Sicurelli v. Jeneric/Pentron Inc.*, 2006 U.S. Dist. LEXIS 29813, at *16 (E.D.N.Y. May 16, 2006) (holding that "scanning electron microscopy" testing conducted by third party laboratory at request of plaintiff's counsel was protected work product); *Martin v. Monfort, Inc.,* 150 F.R.D. 172, 173 (D. Colo. 1993) ("studies or tests conducted after a party is aware of potential litigation have been held to be within the scope of the work product immunity doctrine"); *In re Air Crash Disaster at Detroit Metro. Airport,* 130 F.R.D. 641, 644-45 (E.D. Mich. 1989) (holding that post-accident testing on circuit breakers that was done at direction of defense attorney in anticipation of litigation was protected work product). In addition, medical opinions of a party's non-testifying consultant are protected work product. *See, e.g., Sprague v. Director, Office of Worker's Comp.,* 688 F.2d 862, 869-70 (1st Cir. 1982) (holding that letter from non-testifying doctor to defendant's attorney that set forth the doctor's opinion as to the cause of plaintiff's injuries was protected work product).

Here, by asking Reynolds whether pathology contains evidence of small cell cancer (*see, e.g.,* Requests Nos. 1-2, 5), Plaintiffs' Requests seek discovery of the results of confidential examinations and testing that Reynolds' counsel and its consultants have conducted for purposes

of this litigation. Under the work product doctrine, the identity of the tests Reynolds's counsel chose to conduct, as well as the results of those tests are not discoverable.[3]

Further, Plaintiffs have not alleged any "substantial need" for this pathology information. Plaintiffs' Requests simply attempt to corroborate their own pathological evidence, which does not constitute "substantial need." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) ("A party also does not demonstrate substantial need when it merely seeks corroborative evidence."); *Director, Office of Thrift Supervision, v. Vinson & Elkins,* 124 F.3d 1304, 1308 (D.C. Cir. 1997) ("desire to find corroborating evidence" cannot "overcome the work-product protection").

Reynolds' tests (if any) are discoverable only if Reynolds decides to utilize the tests at trial, or designates a testifying expert who expressly relies upon it. *See, Martin,* 150 F.R.D. at 174 ("situation would be entirely different if Monfort intended to utilize the studies, or . . . if Monfort's experts review and rely upon the studies in formulating their opinions"); *Sicurelli*, 2006 U.S. Dist. LEXIS 29813, at *16-18 ("Of course, if plaintiffs intend to rely on the protected documents, they shall be timely provided to all parties. At present, however, plaintiffs have not indicated that they will rely on the documents they now claim are privileged [work product].")

Further, the work product doctrine applies here even though Plaintiffs elicited the information through Requests to Admit, as opposed to document requests or interrogatories. "Although the work product doctrine is most commonly applied to documents and things, unjustified disclosure of the opinions or mental processes of counsel may occur when questions are posed which seek information at depositions or in interrogatories." *Strauss*, 242 F.R.D. at

---

[3] Of course, Plaintiffs' counsel appropriately relied upon work-product protection (and other privileges) to preclude Reynolds' counsel from questioning the Plaintiffs regarding the deposition prep sessions they had with their counsel.

230; *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 61 (E.D.N.Y. 2007). Plaintiffs cannot circumvent the work product privilege simply by changing the form of their discovery request. The information and opinions they seek are privileged regardless of whether they seek them as admissions, or in the form of documents.

### B.    Requests Seek Facts and Opinions From Non-Testifying Consultants

Similar to the work product doctrine, Rule 26(b)(4)(B) "forbids the judge to order disclosure in pretrial discovery of the facts found or opinions formulated by an opponent's non-testifying experts except . . . upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." *Braun v. Lorillard Inc.*, 84 F.3d 230, 236 (7th Cir. 1996). The policies underlying this rule include the view that each side should prepare its own case at its own expense, and that parties should feel free to use experts to evaluate their case without fear that it may "yield grist for the adversary's mill." *Long Term Capital Holdings v. United States,* 2003 U.S. Dist. LEXIS 14579, at *8-9 (D. Conn. May 6, 2003).

The party seeking discovery from a non-testifying expert "carries a heavy burden in demonstrating the existence of exceptional circumstances." *Spearman Indus., Inc. v. St. Paul Fire and Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1151 (N.D. Ill. 2001). Generally, exceptional circumstances will be found to exist only when (1) the object or condition observed by the non-testifying expert is no longer observable, or (2) the costs to replicate the object or condition would be prohibitive. *Vincent v. Mortman,* 2006 U.S. Dist. LEXIS 60442, at *5 (D. Conn. Aug. 11, 2006); *Bank of Brussels Lambert v. Chase Manhattan Bank,* 175 F.R.D. 34, 44 (S.D.N.Y. 1997). Scientific testing conducted by non-testifying experts generally is not discoverable under Rule 26(b)(4)(B). *See, e.g., Moore USA Inc. v. The Standard Register Co.*, 206 F.R.D. 72, 76

(W.D.N.Y. 2001) (holding that defendant was not entitled to discover information from plaintiff's non-testifying expert regarding chemical testing and that defendant could not show exceptional circumstances because it had its own material to test).

Here, Plaintiffs' Requests ask Reynolds about complex pathological and neurological issues, which Reynolds must necessarily rely on its experts to answer. Thus, by asking Reynolds whether its pathology contains evidence of small cell cancer (*see* Request No. 2) and whether David Ertman had a particular neurological disease (*see* Requests Nos. 6-8), Plaintiffs' Requests seek "facts known or opinions held" by Reynolds' counsel's non-testifying consultants. Until Reynolds designates medical experts who have considered these issues, Plaintiffs are not entitled to these opinions and Reynolds is not in a position to answer them. *Moore USA Inc.,* 206 F.R.D. at 76 ("If Moore eventually names Chemir Labs as a testifying expert and seeks to rely on certain reports that were prepared by Chemir Labs, then [defendant], at that time, will have sufficient access to the relevant work . . . . Until then, there are no circumstances warranting an order compelling discovery of the relevant Chemir documents.").

Plaintiffs advance three arguments in response to Reynolds' objections based on Rule 26(b)(4)(B): (1) that Reynolds has copies of Plaintiffs' expert reports and medical records, and thus probably "has considered other medical causes of David Ertman's lung cancer," (2) that even if Reynolds' experts do not challenge causation, Reynolds can do so through other means, and (3) that Plaintiffs are using the Requests to properly narrow defendant's defenses on causation. (Pls' Mem. at pp. 7-8). None of these arguments constitute "exceptional circumstances" sufficient to warrant disclosure of the opinions of Reynolds' non-testifying experts, nor are they a basis for disclosure on any other ground.

First, Plaintiffs' Requests seek admissions on complicated scientific subjects about which Reynolds' counsel must consult with its experts in order to respond. Regardless of whether Plaintiffs have served expert reports, until Reynolds' experts finalize their opinions and submit expert reports, Reynolds is not able, nor is it obligated under the Rules, to answer Plaintiffs' Requests. Further, while Requests to Admit can be used to narrow the issues for trial, they cannot be used to obtain privileged or otherwise un-discoverable material. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any matter, not privileged"). Moreover, Plaintiffs already know that Reynolds contests medical causation. (*See* Reynolds' Answer, dated 7/31/2001). Once Reynolds designates experts, Plaintiffs will learn the precise basis for Reynolds' causation defense through detailed expert reports, depositions of those experts, and later, through trial exhibit lists.

Finally, Reynolds takes issue with Plaintiffs' argument that it is "clearly in a position—7 years after suit was commenced—to admit or deny whether there is pathological evidence of small cell lung cancer . . . ." (Pls' Mem. at p. 10). As Plaintiffs' own motion explains, "it was not until the middle of January, 2008 that the parties' experts had the opportunity to review plaintiff's pathology . . . ." (*Id.* at p. 5). Moreover, the "number of lawsuits" that Reynolds has been involved in in recent years (*see id.* at p. 10) has nothing to do with whether David Ertman's pathology in *this* lawsuit shows evidence of a particular cancer.

II.    **Because Plaintiffs Have Refused To Produce The Pathology That Is The Basis For Several Of Their Requests and That Their Testifying Expert Relies Upon, Reynolds Is Not In A Position To Respond.**

Requests Nos. 3-5 specifically ask Reynolds to admit that *Dr. Feingold's* pathology shows pathological evidence of small cell lung cancer. For example, Request No. 3 asks Reynolds to admit that the pathology slides that Dr. Feingold stained with "Chromagranin-A"

show "pathological evidence" of small cell lung cancer. Request No. 4 asks Reynolds to admit that the pathology slides that Dr. Feingold stained with "TTF-1" show "pathological evidence" of a "primary pulmonary malignancy."

As described *supra,* Plaintiffs and Dr. Feingold have refused to produce these pathology slides to Reynolds under any reasonable terms. Reynolds has no basis on which to respond to these Requests without first examining the pathology, and then disclosing its experts.

**III.   Reynolds' Additional Objections Provide Further Ground For Why It Should Not and Cannot Supplement Its Responses To Plaintiffs' Requests.**

  **A.   Plaintiffs' Requests Are Untimely**

Fact discovery closed September 20, 2007. (*See* Order 6/21/2007). The only "exception" was for depositions of treating physicians. (*See* Order 3/3/2008). There was no similar exception for Requests to Admit. Thus, all of Plaintiffs' Requests are untimely. If Plaintiffs wanted to serve Requests to Admit out of time, the proper course would have been to seek leave from this Court, which they did not do. Further, there is no reason why Requests Nos. 6 and 7 could not have been timely served. Those Requests are not based upon pathology testing but upon the 1999 treatment and diagnosis of Mr. Ertman's neurological disease. (*See supra*, p. 6). Nonetheless, any information possessed by Reynolds and its counsel which permits a substantive response to Requests Nos. 6-7 remains, for the time being, protected work product.

Notwithstanding Reynolds' objection to all of Plaintiffs' Requests as untimely, Reynolds has agreed—*and is still willing*—to supplement its answers to Plaintiffs' Requests before the close of expert discovery. (*See supra*, p. 6-7). To the extent Reynolds' designated testifying experts have responsive information, Reynolds would provide a substantive response. If the only

responsive information is possessed by consulting experts, Reynolds will continue to assert work-product privilege.

### B.    Plaintiffs' Use Of Word "High" Is Vague

Plaintiffs' Request No. 7 asks Reynolds to admit that in June 1999, David Ertman's serum contained "high" titer type 1 anti-neuronal nuclear autoantibodies. (*See supra*, at p. 6). Reynolds' maintains its original objection that the word "high" is Plaintiffs' own subjective characterization and is vague. Upon information and belief, the word "high" as used in this medical context is not a term of art, nor is it defined within the medical field to mean a precise level or amount. Thus, the term—which Plaintiffs have not defined in their Requests—even among medical professionals is subject to multiple meanings. As such, it is improper for Plaintiffs to seek an admission to Request No. 7.

## CONCLUSION

Based upon the foregoing, Reynolds respectfully requests this Court to deny Plaintiffs' Motion to Determine Sufficiency of Objections to Plaintiff's Requests to Admit.

        Respectfully submitted,

By:   /s/ Amanda S. Jacobs
       Mark A. Belasic (phv0165)
       mabelasic@jonesday.com
       Amanda S. Jacobs (phv01922)
       asjacobs@jonesday.com
       JONES DAY
       901 Lakeside Avenue
       Northpoint Bldg.
       Cleveland, OH 44114
       (216) 586-3939
       (216) 579-0212 (facsimile)

       Mark R. Seiden (ct20612)
       mrseiden@jonesday.com
       JONES DAY
       222 East 41st Street
       New York, NY 10017
       (212) 326-3939
       (212) 755-7306 (facsimile)

       David Thomas Ryan (ct05713)
       dryan@rc.com
       ROBINSON & COLE LLP
       280 Trumbull Street
       Hartford, CT 06103
       (860) 275-8200
       (860) 275-8299 (facsimile)

*Attorneys for defendant*
*R.J. Reynolds Tobacco Company*

## **CERTIFICATION**

I hereby certify that on July 2, 2008, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Amanda S. Jacobs_____
AMANDA S. JACOBS  (phv01922)

CLI-1628688