# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

**RUTH HOLLIS KUHNE,**
**ADMINISTRATOR OF THE**
**ESTATE OF DAVID F. ERTMAN**
**and JANE ERTMAN,**                     3:01cv1090 (WWE)
   **v.**

**R.J. REYNOLDS**

## RULING ON PENDING MOTIONS

The Court makes the following rulings on the pending pretrial motions.

### Motion for 48 Hours Advance Notice of Witnesses and Exhibits

In light of counsel's extensive litigation experience, particularly with tobacco litigation with the same counsel, the Court finds that 24 hours' advance notice is sufficient, although the Court recommends that counsel provide the courtesy of 48 hours' advance notice. The Court will not make exceptions without good cause for the failure to provide adequate notice. This motion is granted in part.

### Motion in Limine to Preclude Lay Opinion Testimony on Addiction

Defendant seeks to preclude non-experts from testifying about Ertman's addiction. Lay witnesses should not offer expert opinion about whether Ertman was addicted. However, witnesses—friends and family of

Ertman—may testify about what they observed about Ertman's smoking and what he told them about his smoking habit, which may include whether he stated that he was "addicted."   Such evidence is relevant to Ertman's state of mind about his ability to stop smoking.

These witnesses may use the word "addicted" in the colloquial sense to describe their observations.   The defense may clarify the difference between a medical expert opinion and a layperson's use of that term on cross examination and the court can also provide an instruction, if necessary.   This motion will be denied.

### Motion in Limine To Preclude Evidence Regarding Preempted Theories of Liability

Defendant claims that FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120 (2000) provides that federal law preempts all state theories of liability that would have the effect of removing tobacco products from the market.   Defendant maintains that plaintiffs' claims are based on a generic attack on the characteristics of all cigarettes, and it seeks an order to preclude evidence or argument in support of a negligent design theory based on the inherent characteristics of cigarettes, including evidence concerning liability based on the addictive and/or cancer-causing nature of

cigarettes.

Defendant's preemption argument has been rejected by the Eleventh Circuit in Graham v. R.J. Reynolds Tobacco Co., 857 F.3d 1169, 1190 (11th Cir. 2017), cert. denied, 138 S. Ct. 646 (2018).   In holding that federal law did not preempt state law claims based on the dangerousness of all the cigarettes manufactured by the tobacco companies, the Eleventh Circuit examined the regulatory statutes and found no indication that "Congress created a regulatory scheme that does not tolerate tort liability based on the dangerousness of all cigarettes manufactured by the tobacco companies but tolerates tort actions based on theories with a more limited scope.   Id. at 1188.   The Court elaborated that a state "may employ its police power to regulate cigarette sales and to impose tort liability on cigarette manufacturers" unless there is "clear and manifest purpose of Congress" to supersede such "historic police power."   Graham, 857 F.3d at 1191.   It noted that "R.J. Reynolds and Philip Morris would have us presume that Congress established a right to sell cigarettes based on a handful of federal labeling requirements."   Id.

In Bifolck v. Philip Morris USA Inc., 06cv1768 (Doc. 332), Judge Underhill also rejected defendant's preemption argument, stating that he

found <u>Graham</u> persuasive and that plaintiff's theory of liability concerned whether specific cigarettes—Marlboro and Marlboro Light--had been manufactured in a way that made them unnecessarily addictive and carcinogenic.   He found that a finding of liability would not amount to a blanket ban of cigarettes.   In the instant case, plaintiffs seek to present evidence concerning the specific design of the Salem cigarettes. Accordingly, the Court will deny the motion in limine in light of <u>Graham</u> and plaintiff's theory of liability that is based on the specific design of Salem cigarettes.

### Motion to Strike Plaintiff's Improper Cumulative Witnesses

Defendant argues that plaintiffs have named four cumulative medical witnesses who will present opinions duplicative of other named medical witnesses.   Plaintiff counters that three of these medical witnesses (Drs. Frederico, Fiedler, and Chung) were directly involved in the treatment of Ertman; and that the fourth witness (Dr. Wick) is an expert in the area of thymic carcinomas, whose testimony is relevant to rebutting defendant's assertion that Ertman's treating physicians mis-diagnosed his small cell lung cancer.   Plaintiffs made the disclosures relevant to Drs. Chung, Frederico, and Fiedler in October 2018, and relevant to Dr. Wick in November 2018.

Defendant has had adequate notice of these witnesses, who appear likely to provide useful information to the jury. Accordingly, the Court will deny this motion without prejudice to specific objections at trial.

### Motion to Preclude Opinions about Permanent Brain Changes

This motion is moot in light of plaintiff's counsel's representation that no such evidence will be presented.

### Motion in Limine to Exclude Evidence that Plaintiff's Expert, Dr. K. Michael Cummings, Donates a Portion of his Fees

The Court will grant the motion as to direct examination but may allow the evidence if the door is opened on cross examination.

### Motion to Preclude Expert Testimony on Meaning of or Intent Behind Company Documents

In <u>Bifolck</u>, Judge Underhill ruled that (1) an expert may not testify to the state of mind of the author of the company documents, but that (2) an expert may, using his or her specialized knowledge, explain the meaning of certain terminology in order to assist the jury. <u>Conference Memorandum and Order</u> (doc. 332). The Court will adopt Judge Underhill's approach and grant the motion as to the state of mind of the author of the documents. If an issue of an author's intent is relevant to the meaning of a technical term, the Court can determine the admissibility of such testimony at trial.

**Motion to Strike Plaintiffs' Cumulative Witnesses, or Alternatively, to Impose Reasonable Time Limits on the Presentation of Evidence**

Defendant requests that the Court narrow plaintiffs' witness list or set time limits on witness testimony. The Court will deny this motion. The well experienced counsel involved in this case should be capable of assessing whether a witness is relevant to the jury's consideration and the amount of time to allocate to each witness.

**Motion in Limine to Exclude Evidence of Any Alleged Youth Marketing**

Defendant claims that this evidence is irrelevant and prejudicial; that the First Amendment protected such marketing as speech; and that evidence of youth marketing prior to plaintiff's birth in 1942, and after he became an adult, should be precluded. Plaintiffs have indicated that pre-1942 evidence will not be presented, but they have otherwise opposed defendant's motion.

Ertman is asserted to have commenced smoking when he was thirteen years old.

In Izzarelli v. R.J. Reynold Tobacco Co, 806 F. Supp. 2d 516, 530 (D. Conn. 2011), Judge Underhill considered whether he had erred by

permitting evidence of "youth marketing." He noted that the evidence that defendant characterized as comprising "youth marketing" concerned, generally "considerations that R.J. Reynolds took in designing Salem Kings, the product's target audience, and how the product was marketed to its target audience." Id. at 530. He ruled that "evidence of how R.J. Reynolds developed its consumer base and marketed its product to that base was relevant in assessing what the consumer base, i.e., the ordinary consumer, understood about the characteristics of a Salem King." Id. Thus, Izzarelli--who, similar to Ertman, had commenced smoking as a minor--was permitted to show (1) that the ordinary consumer "was typically a youth or minor smoker;" (2) that defendant had "endeavored to capture the youth or beginning smoking market," and (3) that defendant acknowledged that minors lacked the capacity to make informed choices about smoking. Id. at 531. Judge Underhill found further that "evidence concerning product design, decisions made by R.J. Reynolds and how the product was marketed to consumers was also relevant for the purposes of deciding whether to award punitive damages."

The Second Circuit affirmed the proper admission of such evidence on several bases. Izzarelli, 701 Fed. Appx. 26, 31 (2d Cir. 2017). "First ,

it supported Izzarelli's claim that Salem Kings were uniquely designed to contain, <u>inter alia</u>, nicotine levels that were just high enough to cause and maintain addiction but low enough to induce frequent smoking," and the plaintiff was able to demonstrate that the Salem King's "design was adopted in part to attract young, new smokers, who disliked the bitterness of nicotine and preferred flavorful cigarettes."   The Court explained that the "youth marketing evidence indicated that minors—who compose the bulk of new smokers and have strong brand loyalty—were Salem Kings' target demographic," which was relevant "because consumer expectation is a factor in determining strict liability."   The Court went on to note that the evidence "informed the jury's understanding of the utility of the product, which is critical to the governing risk-utility test," and that it helped establish defendant's "actual or imputed knowledge of the danger," an "essential element of negligence."   Finally, the Court found that the evidence was relevant to both plaintiff's proof of reckless disregard for punitive damages, and defendant's defense of comparative fault.

In light of this precedent, the Court finds that evidence of marketing and development is relevant to the identification of the ordinary consumer and consumer expectations; whether there was a breach of the duty of

reasonable care; and whether punitive damages should be awarded due to defendant's reckless disregard for safety of consumers or those harmed by the product. However, the Court will consider specific objections to the extent that plaintiffs seek to use such evidence to prejudice defendant in a manner that is irrelevant to the scope of this litigation. Accordingly, this motion will be denied without prejudice to specific objections.

**Motion in Limine to Exclude the Improper Opinion Testimony of Dr. Jeffrey Lustman On Addiction**

Defendant argues that Dr. Lustman, Ertman's treating psychiatrist, should be precluded from offering opinion testimony concerning Ertman's addiction, which is outside of his care and treatment. Defendant also maintains that such testimony is cumulative of medical witness testimony from Dr. Glassman, Dr. Cummings, and Dr. Hills. Plaintiffs have explained that Dr. Lustman will not be able to appear at the trial to testify.

The Court will allow the testimony, which is likely to provide useful, relevant information to the jury. Further, the testimony does not appear to be cumulative. Dr. Glassman has died; Dr. Cummings is not a psychiatrist; and Dr. Hills, has been disclosed as an expert to comment on Dr. Lustman's deposition testimony and medical records relating to his

treatment of Ertman.    This motion will be denied.

**Motion to Preclude Evidence and Argument Regarding Irrelevant Matters**

Defendant has listed the following areas that it claims are irrelevant: (1) comparing Reynolds' conduct to other corporate wrongdoing; (2) commenting on the absence of Reynolds' corporate representatives at trial; (3) referencing the geographic origin of Reynolds' trial counsel or its litigation resources; (4) introducing evidence or questioning witnesses regarding Reynolds' pretrial fact investigation; (5) arguing that Reynolds has failed to take responsibility or apologize to plaintiffs or Ertman; (6) introducing any evidence that Reynolds objected to discovery requests or suggesting that it engaged in discovery misconduct; (7) suggesting that Reynolds' counsel has acted improperly by defending this case, including by arguing that defense counsel has hidden facts from the jury; and (8) inferring that Reynolds has delayed the trial of this action.

Plaintiffs do not disagree.    However, plaintiffs maintain that they are not clear as to the scope of the listed areas of irrelevancy.    The Court can determine the relevancy of the material presented at trial.    Accordingly, this motion will be found as moot.

**Motion in Limine To Exclude Evidence and Argument
Concerning the Food and Drug Administration's Statement
Relating to The Potential Regulation Of Menthol Cigarettes**

Defendant argues that the FDA Commissioner's 2018 statement

regarding steps to protect youth by banning menthol cigarettes is irrelevant,

hearsay and prejudicial.   Plaintiffs argue that it is relevant because the

cigarette at issue is a menthol Salem King, and menthol has the effect of

making it easier to inhale and enhancing the delivery of nicotine to the

lungs and brain.   See Izzarelli, 806 F. Supp. 2d 516, 520-21 (D. Conn.

2011).   Plaintiffs also maintain that the evidence falls within the "public

records exception" of Federal Rule of Evidence 803(8) as "factual findings

from a legally authorized investigation."   Plaintiffs assert further that the

experts are entitled to refer to this evidence in their testimony to the extent

it was relied upon in forming their opinions pursuant to Federal Rule of

Evidence 703, and that any prejudice incurred to defendant is outweighed

by the evidence's probative value.   The Court will defer ruling on the

admissibility of the FDA statement until trial.

**Motion Regarding Limitations on Punitive Damages**

Defendant seeks to limit the jury's consideration of punitive damages

to conduct that allegedly harmed Ertman or evidence similar to conduct that

harmed him.   Plaintiffs counter that defendant's motion "does little more than make broad legal pronouncements" without explaining how the Court should apply the law of punitive damages to the evidence relevant to this case.   At trial, the Court can rule on the scope of evidence relevant to punitive damages and the appropriate legal standards for the jury to consider.   The Court will deny this motion without prejudice to specific objection.

### Motion in Limine to Exclude Surgeon General Reports Regarding Smoking and Health

Defendant argues that the Surgeon General Reports are hearsay, that the reports do not show that defendant had notice of the danger posed by cigarettes, and that admission of such evidence will be overly time consuming.   Plaintiffs counter that these reports may be referred to at trial to the extent that the experts have relied upon them in their opinions as scientific data that experts in the field would reasonably rely upon pursuant to Federal Rule of Evidence 703 or as learned treatises pursuant to Federal Rule of Evidence 803(18).   Plaintiffs also assert that the reports fall into hearsay exceptions for trustworthy public records pursuant to Federal Rule of Evidence 803(8); or as adoptive admissions pursuant to Federal Rule of

Evidence 801(d)(2) because defendant's website refers consumers to these reports.

Federal Rule of Evidence 803(8) provides the following hearsay exception for a public record if:

> (A) it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Defendant argues that the reports do not fall within the public records exception because they do not report original research by employees, representative or member of a governmental body, but rather by members of the public health community with no association with the federal government. Defendant maintains that such reports are untrustworthy because they are based upon hearsay statements from outside agencies; they were prepared by potentially biased or partisan individuals; and the data was not all subjected to peer review or close scrutiny.

Surgeon General reports regarding smoking have been admitted as public records prepared pursuant to legally authorized investigations. See

<u>Boerner v. Brown & Williamson Tobacco Co.</u>, 394 F.3d 594, 600-01 (8th Cir. 2005); <u>In re Bard IVC Filters Products Liability Litig.</u>, 2018 WL 4279833, at *3 (D. Ariz. Sept. 7, 2018).   The reports are subjected to review process that includes peer review, editorial review by scientists, and internal review by the government prior to issuance.   The Court finds that the reports are sufficiently trustworthy for admission.   The motion in limine will be denied without prejudice to specific objection at trial.

### Motion in Limine To Prohibit Plaintiffs' Expert, Dr. K. Michael Cummings, From Testifying Regarding Allegedly "Missing" Documents

Plaintiffs represent that they will not present such evidence. Accordingly, this motion will be found as moot.

### Motion in Limine Based on the Statute of Repose

Defendant seeks to preclude plaintiffs from presenting evidence or referencing cigarettes or acts prior to June 13, 1991, based on the Connecticut ten-year statute of repose, which provides that no product liability claim may be brought "later than ten years from the date that the party last parted with possession or control of the product."   Conn. Gen. Stat. § 52-577a.   Since the lawsuit was brought on June 13, 2001,

defendant seeks to preclude the product liability and derivative consortium claims based on Ertman's smoking ten years prior to filing of the complaint.

In <u>Bifolck</u>, Judge Underhill rejected a similar motion filed by Philip Morris based on the "use safe life" exception to the ten-year statute of repose.   <u>See</u> <u>Memorandum of Decision</u> (Doc. 361).   Section 52-577a(c) provides:

> The ten-year limitation provided for in subsection (a) of this section shall not apply to any product liability claim brought by a claimant who is not entitled to compensation under [Connecticut Workers' Compensation laws], provided the claimant can prove that the harm occurred during the useful safe life of the product.   In determining whether a product's useful safe life has expired, the trier of fact may consider among other factors: (1) The effect on the product of wear and tear or deterioration from natural causes; (2) the effect of climatic and other local conditions in which the product was used; (3) the policy of the user and similar users as to repairs, renewals and replacements; (4) representations, instructions and warnings made by the product seller about the useful safe life of the product; and (5) any modification or alteration of the product by a user or third party.

The useful safe life of a product commences at the time of product delivery, extends for the time during which the product is normally likely to perform or be stored in a safe manner, and expires when the product is no longer likely to be safe for normal use.   <u>Hubbard-Hall v. Monsanto Co.</u>, 98 F. Supp. 3d 480, 484 (D. Conn. 2015).   The duration of the product's useful safe life is a question of fact for the jury.   <u>Id.</u>

In his ruling, Judge Underhill noted that the "purpose of Section 52-577a is to prevent manufacturers from being held liable for defects in their products occurring long after the product left the manufacturer's possession or control." At the same time, as Judge Underhill pointed out, the statute's legislative history indicates that the "useful safe life" exception was intended to benefit consumers who had been harmed by "inhalation or ingestion of chemical, drugs or substances where the damage done may not be known for many years." <u>See</u> Remarks of Sen. Salvatore De Piano, Transcript of Senate Floor Debate, May 29, 1979, 22 Senate Proceedings, Part 14, 1979 Session, pp. 4625-4650. Judge Underhill found that the harm covered by the exception to Section 52-577a may remain latent for many years after use or exposure to injurious substance. In accordance with Judge Underhill's reasoning in <u>Bifolck</u>, the Court will deny the motion in limine. Plaintiffs may submit their proof to the jury that Ertman's use of the product was within its useful safe life.

### Motion in Limine to Preclude Ertman's Treating Otolaryngologist Dr. David Astrachan From Offering Trial Testimony That Is Beyond His Care and Treatment of Ertman

Defendant maintains that Dr. Astrachan, a treating physician, was not

disclosed as a witness to testify about his opinion that Ertman's problems with hearing, balance, swallowing and other neurological problems were caused, in part, by his Paraneoplastic Syndrome, which derived from his body's anti-Hu immune response to his small cell lung cancer. Dr. Astrachan has explained that he formed this opinion as he reviewed documents in preparation for his deposition.

A treating physician who will testify about information acquired by outside sources or other physicians should be considered a retained medical expert and provide an expert report, providing notice of witness testimony on a complicated topic. Brutton v. United States, 687 Fed. Appx. 56, 58 (2d Cir. 2017). However, the Court has discretion to allow testimony even where there is non-compliance with disclosure requirement if such error is harmless. See Israeli v. Ruiz, 2015 WL 4618055 at *2 (S.D.N.Y. July 27, 2015).

Here, upon consideration of the history of this case, including Dr. Astrachan's 2007 disclosures and his 2008 deposition, the Court is satisfied that defendant had sufficient notice of Dr. Astrachan's testimony and will incur no prejudice by admission of this testimony despite the lack of expert report. Defendant is not being subjected to trial by ambush.

Defendant asserts that Dr. Astrachan formed this opinion solely for the purpose of litigation and is not qualified to give an opinion testimony regarding the Paraneoplastic Syndrome. However, the Court finds that Dr. Astrachan is qualified to testify about Ertman's Paraneoplastic Syndrome. Defendant will have the opportunity to cross examine the witness regarding his qualifications, scope of his treatment, and how he developed his opinions regarding Ertman's Paraneoplastic Syndrome. This motion will be denied.

### Motion in Limine to Preclude Evidence of "Lack of Commercial Success" of Cigarettes other than the Salem Cigarettes at Issue in this Action

Plaintiffs argue that evidence of commercial viability of a product is not relevant to the issue of whether a safer alternative design was feasible, and that defendant cannot show that unsuccessful low tar products are comparable to Salem cigarettes, or that acceptability is the same as utility relevant to risk utility. Defendant maintains that the function of a cigarette is to give pleasure and that a lack of commercial success of a low tar product demonstrates an unacceptable alternative design. During the Bifolck trial, Judge Underhill excluded similar testimony based on a similar motion, reasoning that commercial viability of a product is not relevant to

the issue of dangerousness, and that commercial acceptability is not the equivalent of utility.[1]    Based on Judge Underhill's reasoning in <u>Bifolck</u>, the Court will grant the motion.

### Motion in Limine to Exclude Certain Testimony by Charles Garner

Plaintiffs seek to preclude Dr. Charles Garner--who is the Senior Vice President of Next Generation Products/Submission and Engagement in the Scientific and Regulatory Affairs Division of Reynold's sister company, RAI Services Company--from testifying (1) that there is no such thing as a safe cigarette in light of his prior testimony that that defendant never studied the addictiveness of very low nicotine or tar cigarettes; (2) about activities prior to the time he commenced work for defendant in 1995; and (3) about defendant's conduct subsequent to Ertman's consumption of Salem cigarettes, and subsequent to his cancer diagnosis.

As to the first issue, defendant asserts that Dr. Garner should be allowed to testify on whether there is a "safe cigarette," whether all cigarettes are carcinogenic, and whether all cigarettes are addictive. Defendant explains that Dr. Garner's prior deposition testimony explained

---

[1] Trial transcript, 2119 (Exhibit B to Golub Declaration).

that the lack of criteria to assess a cigarette product's relative addictiveness was due to the fact that addiction thresholds vary from individual to individual.

As to the second issue concerning defendant's activities prior to Garner's employment, defendant maintains that Dr. Garner, as a senior scientist with defendant, is required to have knowledge about current and historical activities.

Defendant claims that Dr. Garner's testimony regarding post-injury conduct is relevant to rebut the claim for punitive damages by showing that such an award is not necessary to deter defendant from engaging in its prior injurious conduct.   Defendant maintains that plaintiffs' statement that they will not seek a deterrence instruction as part of the jury's punitive damages consideration would give rise to an unconstitutional deprivation of defendant's due process right to defend itself.   In Bifolck, Judge Underhill precluded post-injury evidence in light of plaintiff's representation that deterrence would not be argued.

The Court will defer consideration of Dr. Garner's testimony until relevant at trial.

**Motion in Limine to Preclude Examination of Plaintiffs' Medical Witnesses re: Feasibility of Designing "Safe" or "Safer" Cigarettes**

Plaintiffs move for the Court to preclude defendant's counsel from cross examining its medical witnesses regarding the feasibility of designing cigarettes that are either "safe" or "safer" than Salem cigarettes; plaintiffs assert that such information is beyond the witnesses' knowledge and scope of their testimony.   Defendant agrees that plaintiffs' medical witnesses are not qualified to offer cigarette design opinions, but counters that defendant should be allowed to examine witnesses regarding their "perceptions of the market availability of 'safe' or 'safer' cigarettes."

In Bifolck, Judge Underhill considered an analogous motion. Conference Memorandum and Order, (Doc. 360).   He ruled that "medical experts are not sufficiently qualified to testify about the design feasibility of "safe" or "safer" cigarettes, because they are not cigarette design experts." However, he noted that it is proper cross-examination to ask medical experts about their perceptions of the market availability of "safe" or "safer" cigarettes.   He allowed the defense to "ask questions about whether the witnesses are aware of any cigarette on the market that they deem 'safe' or 'safer' but not about whether it is theoretically possible to design 'safe' or

'safer' cigarettes."   The Court will follow Judge Underhill's ruling on this issue.   Accordingly, the motion will be denied as to questions about witnesses' awareness of any cigarette on the market that they deem 'safe' or 'safer,' and granted as to questions about the design feasibility of "safe" or "safer" cigarettes.   The Court will rule on specific objections regarding relevancy or prejudice at trial.

**Motion to Preclude Expert Testimony by Steven Hoge**

Steven Hoge, a psychiatrist and Director of Mid-Hudson Forensic Center, has opined that Ertman was not addicted to tobacco or nicotine. Plaintiffs argue that his opinions should be excluded due to incorrect application of the diagnostic criteria.   Defendant counters that his opinions are scientifically supported and that he is well qualified.

The Court will deny the motion to preclude.   Plaintiffs may challenge Hoge's opinions on cross examination.

**Motion to Preclude Expert Testimony Regarding Differential Response Rates**

Plaintiffs seek to preclude certain assertedly unreliable testimony from defendant's medical experts offered to support the defense theory that

Ertman suffered from thymic cancer rather than small cell lung cancer. Specifically, plaintiffs challenge the testimony--from Robert Schick, a radiologist, and Dr. Parvesh Kumar, a radiation oncologist--about the diagnostic significance of differential treatment response rates. Plaintiffs maintain that defendant has not sustained its burden of demonstrating the scientific reliability of its theory that a disparate treatment response has any diagnostic significance.[2]

The district court has a "gatekeeping" role pursuant to Federal Rule of Evidence 702 and is charged with ensuring that an expert's testimony rests on a reliable foundation and is relevant to issues presented in the case. Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002). A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or

---

[2] Defendant has clarified that it does not intend to solicit an opinion at trial from Dr. Steven Hajdu, a pathologist, regarding the difference in treatment response of Ertman's lung abnormality.

data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.    Fed. R. Evid. 702.

The Court should consider (1) whether a theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) a technique's known or potential rate of error, and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.    Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); Amorgianos, 303 F.3d at 266.   "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible.   The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good ground' for his or her conclusions." Id. at 267.

The burden is on the party proffering the expert testimony to lay a foundation for its admissibility, and a court must consider the totality of the expert witness's background when evaluating expert qualifications. Kuzmech v. Werner Ladder Co., 2012 WL 6093898, at *7 (D. Conn. 2012).

Plaintiffs do not contest that Dr. Schick should be permitted to testify

24

on his opinion that plaintiff's radiology films show an abnormality that was a tumor or aspiration; or that Dr. Kumar should be permitted to testify about his opinion regarding the improper administration of radiation Ertman's lungs.   However, plaintiffs contend that these witnesses should not be allowed to support their opinions with testimony about the diagnostic significance of a disparate response to treatment in different body parts. Plaintiffs maintain that it is invalid and unfounded to assert that Ertman's abnormality on his upper right lung could not be lung cancer because it responded to chemotherapy treatment faster than the cancer in his lymph nodes; and that medical and scientific literature are undisputed that cancers in different parts of the body can respond differently to treatment, such that a differential response rate is not diagnostically significant.   In support of this position, plaintiffs have submitted the declaration of a board-certified oncologist, Dr. Joseph O'Connell.

Defendant represents that Dr. Kumar's opinion regarding response rates is based on his years of clinical experience.   In his deposition, he stated that he had treated "hundreds of cases with limited stage small cell lung cancer" and has seen "relatively similar responses between the primary site and the lymph node metastasis."   He also represented that he

had never seen "significantly differential responses" to chemotherapy or radiation between a small cell cancer and primary site in the lung and a secondary site in the lymph node.

Plaintiffs counter that defendant failed to provide a declaration from any physician or any medical literature to contradict the peer-reviewed literature submitted and attested to by Dr. O'Connell.   Plaintiffs argue that Dr. Kumar's assertion he has "never seen" a similar discrepancy in treatment response does not constitute a sufficient basis for demonstrating the scientific reliability of the diagnostic significance of a disparate treatment response.

Relevant to Dr. Schick, defendant asserts that he is competent to testify about the diagnostic significance of differing response rates due to his years of experience as a practicing radiologist.   Plaintiffs represent that Dr. Schick testified at deposition that he was not qualified to testify about why cancers in different parts of the body might respond differently.

At this time, the Court will defer ruling on this motion until it has had the opportunity to voir dire the witnesses regarding the bases for their opinions and the medical support for the theory that differential response rates have a diagnostic significance.

**CONCLUSION**

For the foregoing reasons, the Court makes the following rulings:

**Motion for 48 Hours' Advance Notice of Witnesses and Exhibits (Doc. 260)** is GRANTED to the extent that the Court requires that counsel provide 24 hours' notice.

**Motion in Limine to Preclude Lay Opinion Testimony on Addiction (Doc. 261)** is DENIED.

**Motion in Limine To Preclude Evidence Regarding Preempted Theories of Liability (262)** is DENIED.

**Motion to Strike Plaintiff's Improper Cumulative Witnesses (Doc. 263)** is DENIED without prejudice to specific objections at trial.

**Motion to Preclude Opinions about Permanent Brain Changes (Doc. 264)** is MOOT.

**Motion in Limine to Exclude Evidence that Plaintiff's Expert, Dr. K. Michael Cummings, Donates a Portion of his Fees (Doc. 265)** is GRANTED as to direct examination but may the Court may allow the evidence if the door is opened on cross examination.

**Motion to Preclude Expert Testimony on Meaning of or Intent Behind Company Documents (Doc. 266)** is GRANTED in part. The experts may not testify as to the state of mind of the author of the company documents, but may explain the meaning of certain terminology in order to assist the jury.

**Motion to Strike Plaintiffs' Cumulative Witnesses, or Alternatively, to Impose Reasonable Time Limits on the Presentation of Evidence (Doc. 267)** is DENIED.

**Motion in Limine to Exclude Evidence of Any Alleged Youth Marketing (Doc. 268)** is DENIED without prejudice to specific objections.

**Motion in Limine To Exclude the Improper Opinion Testimony of Dr. Jeffrey Lustman on Addiction (Doc. 269)** is DENIED.

**Motion to Preclude Evidence and Argument Regarding Irrelevant Matters (Doc. 271)** is MOOT.

**Motion in Limine To Exclude Evidence and Argument Concerning the Food and Drug Administration's Statement Relating to The Potential Regulation of Menthol Cigarettes (Doc. 275)** is under consideration.

**Motion Regarding Limitations on Punitive Damages (Doc. 277)** is DENIED without prejudice to specific objections at trial.

**Motion in Limine to Exclude Surgeon General Reports Regarding Smoking and Health (Doc. 278)** is DENIED without prejudice to specific objections at trial.

**Motion in Limine to Prohibit Plaintiffs' Expert, Dr. K. Michael Cummings, From Testifying Regarding Allegedly "Missing" Documents (Doc 280)** is MOOT.

**Motion in Limine Based on the Statute of Repose (Doc. 281)** is DENIED.   Plaintiffs may submit their proof to the jury that Ertman's use of the product was within its useful safe life.

**Motion in Limine to Preclude Ertman's Treating Otolaryngologist Dr. David Astrachan From Offering Trial Testimony That Is Beyond His Care and Treatment of Ertman (Doc. 308)** is DENIED.

**Motion in Limine to Preclude Evidence of "Lack of Commercial Success" of Cigarettes other than the Salem Cigarettes at Issue in this Action (Doc. 270)** is GRANTED.

**Motion in Limine to Exclude Certain Testimony by Charles Garner (Doc. 272)** is under consideration.

**Motion in Limine to Preclude Examination of Plaintiffs' Medical Witnesses re: Feasibility of Designing "Safe" or "Safer" Cigarettes (Doc. 273)** is DENIED as to questions about witnesses' awareness of any cigarette on the market that they deem 'safe' or 'safer,' and GRANTED as to questions about the design feasibility of "safe" or "safer" cigarettes.   The Court will rule on specific objections regarding relevancy or prejudice at trial.

**Motion to Preclude Expert Testimony by Steven Hoge (Doc. 274)** is DENIED.

**Motion to Preclude Expert Testimony Regarding Differential Response Rates (Doc. 312)** is under consideration until the Court has had the opportunity to voir dire the witnesses.

Dated this 27th day of February 2017, at Bridgeport, Connecticut.

/s/Warren W. Eginton
Warren W. Eginton
Senior U.S. District Judge